June 25, 2024

**VIA ECF**
Hon. Philip M. Halpern
The Hon. Charles L. Brieant Jr. Federal Building and United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

**Re**:     **Skanska USA Building Inc. v. Regeneron Pharmaceuticals, Inc.**
              **Docket No.: 7:23-cv-8418 (PMH) (S.D.N.Y.)**

Dear Judge Halpern:

        Please accept this joint letter on behalf of the parties, pursuant to Local Rule 37.2 and Rule

4(D) of Your Honor's Individual Practices, regarding Skanska's request for a pre-motion

conference to address certain discovery disputes.

**Skanska's Position**

        This litigation involves a dispute over construction management services provided by

Skanska in connection with new constr[...] York (the "Project"), for which Skanska [...] and impact damages, among other t[...] complete and approved drawings and [...] professionals to complete the design. [...] produce constructable designs and wor[...] further changes even after they were [...] incomplete, and ever-changing design[...]

> Application granted. A conference is scheduled for July 3, 2024 at
> 11:30 a.m. concerning the matters raised in the parties' joint letter
> (Doc. 40). The conference will be held in-person in Courtroom 520 of
> the White Plains courthouse.
>
> The Clerk of Court is respectfully directed to terminate the letter
> motion pending at Doc. 40.
>
> SO ORDERED.
>
> _(signature)_
>
> Philip M. Halpern
> United States District Judge
>
> Dated:  White Plains, New York
>            June 26, 2024

costs. Regeneron has refused to compensate Skanska for these costs and for the additional services

that Regeneron requested. Skanska sought Discovery related to Regeneron's designers whose

services impacted Skanska's work and contributed to its additional costs. Skanska requested

Regeneron's agreements with its designers; documents concerning the services rendered by the

design professionals and the schedules under which they were working; and communications concerning Regeneron's review, approval, and modification of design drawings that are central to the dispute.

Regeneron objected to these requests as overly broad and now conditions production of *any* design records on restrictive ESI search terms for *all* of Skanska's requests (not just those related to the designers) so that the search terms yield fewer hits in total for all Skanska's requests. Skanska's requests are narrowly tailored and Regeneron's conditions are improper. More troubling, Regeneron refuses to produce non-email records related to the designers such as their contractual documents that are easily collectible and <u>not</u> dependent on search term hits. These records (and Regeneron's ability to identify and produce them) have no relation to an agreement on search terms, yet Regeneron continues to unjustifiably withhold them and, in doing so, has brought Discovery to a halt[1].

Skanska also requested records from Regeneron related to Torcon Inc. ("Torcon"), the construction manager ("CM") which preceded Skanska and, upon information and belief, departed the Project for reasons similar to those being litigated. Torcon executed an agreement with Regeneron for a similar scope of work and, like Skanska, Regeneron inhibited Torcon's performance and negated the prospect of work being awarded on subsequent phases (patterns which fit Skanska's allegations of bad faith contract interpretation and negotiation against Regeneron). Skanska requested that Regeneron produce various records and communications related to Torcon, including Torcon's contract, and communications concerning its work.

---

[1] On or about June 5, 2024, Skanska made its first production of records responsive to Regeneron's demands. This production consisted of approximately 1,546 project records related to, *inter alia*, Constructability Reviews, Cost Events, Estimates, and Scheduling. In contrast and as further evidence of its resistance to Discovery, Regeneron's first production consisted exclusively of e-mails between Regeneron and Skanska, all of which were already in Skanska's possession.

Regeneron objected on relevancy and proportionality grounds. This Discovery is relevant because, among other reasons, it addresses Torcon's scope of work that overlapped with Skanska's (i.e., Skanska's Precon work involved using Torcon's work product) and whether Regeneron interpreted and enforced its contract with Skanska arbitrarily and in bad faith given the similarity of the terms in its contract with Torcon. Further, as Skanska has been advised by Torcon, Regeneron surreptitiously altered documents related to compensation for Torcon's work in a manner similar to Regeneron's improper alteration of change orders for Skanska's work which bear upon Skanska's allegations of bad faith (see, e.g., Complaint at ¶ 143).

Skanska also requested Discovery concerning Suffolk Construction Company ("Suffolk"), the CM that followed Skanska on the Project. What Regeneron communicated to Suffolk regarding Skanska's work and why Skanska was ceasing its performance (as well as Skanska's claims in the litigation) is highly relevant, particularly given Suffolk's performance of the work and Skanska's involvement in transitioning work to Suffolk. Moreover, it is believed that Regeneron made statements against interest to Suffolk regarding Skanska's performance, why Skanska was leaving the Project, and likely interpreted clauses in Suffolk's contract differently than similar or identical provisions in Skanska's contract. Regeneron has improperly refused to provide this Discovery on relevancy grounds and refused to negotiate search terms. Regeneron's improper stance, including its positions on search terms, have brought Discovery to a standstill. Skanska respectfully requests a conference to file a motion to compel to resolve these Discovery disputes.

**<u>Regeneron's Position</u>**

Skanska's claims primarily involve two issues: (1) whether certain preconstruction services were within the scope of the parties' agreements and therefore covered by the fixed fee provided to Skanska thereunder; and (2) whether Regeneron caused delays to the Project entitling

Skanska to delay and impact damages.  (*See* Compl. ¶¶ 161-87.)  With one week left in the document production phase of discovery, Skanska now seeks more than 100,000 additional documents that will transform this straightforward dispute—in which Skanska (baselessly) asserts approximately $5 million in damages—into sprawling discovery on irrelevant, collateral issues that will cost Regeneron hundreds of thousands of dollars in additional legal costs, if not more.

Following the meet-and-confer process, Regeneron agreed to produce documents in response to most of Skanska's 59 requests (attached as Ex. A).  As detailed below, however, certain requests are overbroad, seek irrelevant information, and would significantly and disproportionately increase the scope of discovery.  Moreover, Skanska's refusal to narrow its overbroad proposed search terms for the collection of ESI would result in Regeneron having to review approximately ***187,000 documents*** for potential production—***double*** the amount Skanska is reviewing—at a total cost approaching $1 million.  That is not remotely proportional to the needs of this case.

Skanska's request is also untimely.  The deadline for document production—June 28—is one week away.  (*See* ECF No. 38.)  Regeneron served its objections to Skanska's requests <u>*nearly four months ago*</u>, and Skanska has known since early May that the parties were at an impasse.  (*See* Ex. B.)  If Skanska's requests are granted, the parties will need to re-open document production and spend months reviewing tens of thousands of additional documents, delaying depositions and an ultimate resolution of this case.  The Court should decline Skanska's eleventh-hour invitation.

***Design Documents.***  Contrary to Skanska's assertion, Regeneron agreed to produce its agreements with design professionals.  (*See* Exs. B, C.)  Regeneron also agreed to produce documents in response to Requests 23 and 25, which seek communications concerning changes to the Project drawings, since Skanska's claims relate to alleged design changes.  However, Regeneron reasonably objected to Skanska's proposed search terms to collect the documents.  Far

from "narrowly tailored," those search terms would add more than 60,000 documents to be reviewed, on top of the tens of thousands of documents already being reviewed by Regeneron.[2]

***Torcon Documents.*** Skanska's requests relating to the prior construction manager ("<u>CM</u>") for the Project, Torcon, constitute a fishing expedition.[3]  They are based on nothing more than the threadbare allegations, "upon information and belief," that Torcon left the Project "due to conduct by Regeneron that was similar to the improper conduct suffered by Skanska."  (Compl. ¶ 13.) Skanska asserts these documents are relevant because they "address[] Torcon's scope of work that overlapped with Skanska's . . . and whether Regeneron interpreted and enforced its contract with Skanska arbitrarily and in bad faith given the similarity of the terms in its contract with Torcon." Skanska's speculative rationale illustrates that these documents are, at best, tangential to Skanska's claims.  Simply put, the documents have no relevance to whether the services for which Skanska seeks additional compensation are "Additional Preconstruction Phase Services" under Regeneron's contract with Skanska and whether Regeneron caused alleged delay damages. Moreover, Skanska's proposed search terms for Torcon-related documents hit on more than 67,000 documents, which would significantly and disproportionately increase the scope of discovery.

***Suffolk Documents.***  Skanska's requests relating to the new CM, Suffolk, are not even based on allegations in the Complaint, but on unsupported statements that "it is believed that Regeneron made statements against interest to Suffolk regarding Skanska's performance, why Skanska was leaving the Project, and likely interpreted clauses in Suffolk's contract differently

---

[2] Regeneron also objected to Request Nos. 21 and 22, which seek all documents "concerning the review, approval, or issuance of construction design drawings on the Project by Defendant or its Design Professionals" and "concerning the design services rendered by Design Professionals that relate to Plaintiff's work on the Project."  Regeneron does not understand Skanska to still be pursuing these Requests, which are grossly overbroad and could potentially bring in every document relating to the Project.

[3] *See, e.g.* Ex. A, Requests 41-43 (seeking "[a]ll communications . . . concerning Torcon's performance of preconstruction services at the Project[,]" "[a]ll communications with Torcon concerning the negotiation of contracts", "[a]ll internal communications concerning the negotiation of contracts . . . by Torcon").

than similar or identical provisions in Skanska's contract." These speculative assertions are hardly

a basis for discovery into matters collateral to the core issues in this case. Regeneron's contractual

relationship with Suffolk is irrelevant to whether it breached its contract with Skanska.[4]


Respectfully submitted,

*Benjamin J. Hochberg*

BENJAMIN J. HOCHBERG, ESQ.
Email: BHochberg@pecklaw.com

CC:    Bruce D. Meller, Esq.
       Peter E. Moran, Esq.
       Jonathan Ohring, Esq. (*Counsel for Regeneron* via ECF)
       Russell M. Yankwitt, Esq. (*Counsel for Regeneron* via ECF)

---

[4] Contrary to its assertion, Skanska has never even proposed search terms for Suffolk documents.