UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SKANSKA USA BUILDING INC.,

                              Plaintiff,

                -against-

REGENERON PHARMACEUTICALS INC.,

                              Defendant.

**OPINION AND ORDER**

No. 23-CV-8418 (PMH)

PHILIP M. HALPERN, United States District Judge:

Skanska USA Building Inc. ("Skanska" or "Plaintiff") initiated this breach of contract action against Regeneron Pharmaceuticals, Inc. ("Regeneron" or "Defendant") on September 22, 2023. (Doc. 1, "Compl."). The Complaint presses two claims for breach of contract, two claims for breach of the covenant of good faith and fair dealing, and one claim for declaratory judgment. (*Id.*). The Court issued a Civil Case Discovery Plan and Scheduling Order on December 20, 2023 (Doc. 17) and an Amended Civil Case Discovery Plan and Scheduling Order on April 8, 2024 (Doc. 38).

While discovery was underway, and in accordance with the briefing schedule set by the Court, Defendant moved to dismiss the Third, Fourth, and Fifth Claims for Relief under Federal Rule of Civil Procedure 12(b)(6) on January 5, 2024. (Doc. 21; Doc. 22, "Def. Br."; Doc. 23, "Ohring Decl."). Plaintiff opposed on January 22, 2024 (Doc. 24, "Pl. Br.") and the motion was fully submitted upon the filing of Defendant's reply brief on February 5, 2024 (Doc. 25, "Reply").[1]

For the reasons set forth below, Defendant's partial motion to dismiss is GRANTED.

---

[1] Citations to the parties' filings correspond to the pagination generated by ECF.

**BACKGROUND**

I.     The Master Services Agreement

Skanska is a construction management firm with its principal place of business in Parsippany, New Jersey. (Compl. ¶¶ 5-6). Regeneron is a corporation engaged in the business of developing and manufacturing pharmaceuticals with its principal place of business in Tarrytown, New York. (*Id*. ¶¶ 7-8).

The parties executed a contract, the Master Service Agreement ("MSA"), which became effective on March 3, 2022. (*Id*. ¶ 14; Ohring Decl., Ex. A, "MSA"). Under the MSA, Skanska agreed to perform various construction management services for Regeneron in connection with new construction located at Regeneron's campus in Tarrytown (the "Project"). (Compl. ¶¶ 1, 14). The MSA is an overarching contract that governs the parties' respective rights and obligations with respect to the Project, and it was intended that separately negotiated Statements of Work ("SOWs") would further define the parties' rights, duties, and obligations with respect to the various phases and portions of work. (*Id*. ¶¶ 14-16).

The MSA delineates two basic phases of work at the Project—the Preconstruction phase and the Construction phase. (*Id*. ¶ 20). The parties intended for separate SOWs to dictate Skanska's specific scope of work for each phase. (*Id*. ¶ 21). Unexecuted template SOWs were appended to the MSA as exhibits. (*Id*. ¶ 23). After the execution of the MSA, the parties had the ability to negotiate the terms of each specific SOW. (*Id*.). The MSA and related SOWs are to be construed in accordance with New York law. (*Id*. ¶ 17; MSA § 48.4).

II.     The Preconstruction Phase

The parties separately negotiated and, on March 24, 2022, executed a Statement of Work with respect to the Preconstruction phase ("Precon SOW"). (*Id*. ¶¶ 24, 43; Ohring Decl., Ex. B,

"Precon SOW"). The Precon SOW contemplates three major areas for work: "Loop Road Phase 1, Loop Road Phase 2, and a pedestrian bridge connecting Loop Road Phase 1 to the buildings on Regeneron's existing South Campus." (Compl. ¶ 45). Preconstruction phase services included, generally: (i) assisting in the development of a Project Execution Plan; (ii) providing a critical path Project schedule; (iii) providing budget control recommendations and construction cost estimates; (iv) reviewing the Due Diligence & Existing Conditions documentation; (v) reviewing constructability assessments; and (vi) conducting a fully coordinated bid process. (*Id*. ¶ 46). The MSA also provides that Skanska is entitled to compensation for any services provided during the Preconstruction phase which are requested by Regeneron and extend beyond the scope and schedule as defined by the agreements, and which are memorialized by a written Change Order. (*Id*. ¶¶ 35-37, 40-41, 47; MSA §§ 5.2.1(p), 34.1.1-34.1.3).

Moreover, the Precon SOW set forth the duration of services for the Preconstruction phase as well as specified milestone event dates. (Compl. ¶ 50; Precon SOW § 8). Per the process set forth in the Precon SOW, Skanska could not proceed to the next section of work until an "authorization to proceed with bidding and negotiation" or "ATP" was issued for the preceding milestone. (Compl. ¶¶ 51-52, 57-58). The Precon SOW was executed as a lump sum agreement in the amount of $6,576,465. (*Id*. ¶ 44; Precon SOW § 2).

In early June 2022, Regeneron requested additional services from Skanska that were outside the scope of the originally contracted services under the MSA and Precon SOW ("Additional Services") and which "caused delays, inefficiencies and other impacts to Skanska's work during the Preconstruction Phase." (Compl. ¶¶ 62-63, 66, 69-72). The Complaint alleges that Regeneron "failed to issue a Change Order for the Additional Services, to acknowledge financial responsibility for these services, or to pay for any portion of these services." (*Id*. ¶ 81).

3

Additionally, Skanska alleges that it incurred significant delay and impact costs in the Preconstruction phase due to Regeneron's mismanagement of the design portions of the Project. (*Id*. ¶¶ 83-84). The Complaint alleges that Regeneron has failed to acknowledge responsibility for or pay the delay and impact costs caused by its failure to timely issue ATPs or construction drawings. (*Id*. ¶¶ 101-102). Skanska alleges that the delays and impacts caused by Regeneron and its failure to pay Skanska for those costs constitute material breaches of the MSA and Precon SOW, and amount to a total cost exceeding $3,000,000. (*Id*. ¶¶ 103-104).

      III.    <u>The Construction Phase</u>

Skanska and Regeneron began negotiations for the Construction phase SOWs in November 2022. (*Id*. ¶ 105). However, the Complaint alleges that it has become apparent that Regeneron has no intention of retaining Skanska for the Construction phase of the Project and that it was merely using Skanska's preconstruction work to undercut Skanska's position in the negotiation of the remaining Construction phase SOWs. (*Id*. ¶ 106). The negotiations regarding the Construction phase ultimately failed because, *inter alia*, Regeneron allegedly engaged in bad faith negotiation tactics such as not adequately clarifying the commercial model and insisting on utilizing unrealistic construction milestones. (*Id*. ¶¶ 120-121, 126). Thereafter, Regeneron starting directly soliciting its own bids for a construction manager for the remaining Construction phase work. (*Id*. ¶ 127).

This litigation followed.

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)).[2] A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## ANALYSIS

Defendant moves to dismiss the last three of Plaintiff's claims for relief: (3) declaratory judgment; (4) breach of the covenant of good faith and fair dealing (Preconstruction phase); (5) breach of the covenant of good faith and fair dealing (Construction phase). (*See generally* Compl.).

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

I.      <u>Third Claim for Relief: Declaratory Judgment</u>

Plaintiff's Third Claim for Relief purports to bring a claim for declaratory judgment. (Compl. ¶¶ 188-202). Plaintiff seeks relief in the form of a "judgment declaring that Regeneron has constructively terminated the Precon SOW." (*Id.* ¶ 202).

Defendant first argues that this claim should be dismissed because declaratory judgment is a remedy rather than a cause of action. (Def. Br. at 20). The Court agrees. The Third Claim for Relief cannot be sustained because "the law does not recognize a declaratory judgment claim for relief." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *7 (S.D.N.Y. June 30, 2021). This is because "a declaratory judgment is a remedy, not a cause of action." *Abraham v. Town of Huntington*, No. 17-CV-03616, 2018 WL 2304779, at *14 (E.D.N.Y. May 21, 2018); *see also In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) ("A request for relief in the form of a declaratory judgment does not by itself establish a case or controversy involving an adjudication of rights.").[3]

Even if the Court were to consider the merits of Plaintiff's request, a declaratory judgment is not necessary here. "The Court's discretionary decision to award declaratory judgment turns on (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment will finalize the controversy and offer relief from uncertainty." *StandardAero Aviation Holdings, Inc. v. Signature Aviation Ltd.*, No. 22-CV-07515, 2024 WL 125574, at *5 (S.D.N.Y. Jan. 11, 2024) (quoting *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005)). "Courts in this Circuit routinely dismiss

---

[3] Plaintiff requests that if the Court determines that the Third Claim for Relief cannot be sustained as a cause of action, the Court treat its declaratory judgment claim as a form of equitable relief under one of the uncontested contract claims. (Pl. Br. at 20 n. 4). The Court declines to construe the pleadings as such.

requests for declaratory judgment when the parties' rights will be adjudicated through a breach of contract claim in the same action." *Id.* (quoting *Com. Lubricants, LLC v. Safety-Kleen Sys., Inc.*, No. 14-CV-07483, 2017 WL 3432073, at *17 (E.D.N.Y. Aug. 8, 2017)).

Here, Plaintiff contends that a declaratory judgment is necessary to "establish[] the parties' prospective, contractual rights" and "offer relief from uncertainty from the inequitable holding pattern in which Skanska is placed," in which it "continues to perform needless work when Regeneron has signaled no intention of paying or carrying forward with Skanska to the construction phase." (Pl. Br. at 18-21). But the allegations underlying the alleged constructive termination of the Precon SOW are the same allegations that underlie the breach of contract claims—specifically, Defendant's failure to pay for Additional Services, refusal to timely issue ATPs, issuance of revised construction drawings, obstruction of the bidding process, and other actions causing delays. (Compl. ¶¶ 173, 181, 192, 195; Def. Br. at 21). Plaintiff fails to identify any non-duplicative allegations between its breach of contract claims and its declaratory judgment claim. (Pl. Br. at 20). Therefore, a declaratory judgment is not necessary to clarify any uncertainty because the allegations underlying the declaratory judgment claim derive from the parties' obligations under the MSA and Precon SOW and will be resolved through resolution of the breach of contract claims.

Accordingly, the motion to dismiss is granted as to the Third Claim for Relief.

II.     Fourth Claim for Relief: Breach of the Covenant of Good Faith and Fair Dealing (Preconstruction Phase)

"Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance." *Schiff v. ZM Equity Partners, LLC*, No. 19-CV-04735, 2020 WL 5077712, at *7 (S.D.N.Y. Aug. 27, 2020) (quoting *Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y.

7

1995)). This covenant "is not designed to enlarge or create new substantive rights between the parties," *Ferguson v. Lion Holding, Inc.*, 478 F. Supp. 2d 455, 479 (S.D.N.Y. 2007), but "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 364 (S.D.N.Y. 2012) (quoting *Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir. 2011)). The covenant "can only impose an obligation consistent with other mutually agreed upon terms in the contract," and may "survive[] a motion to dismiss where the implied promise protects either the contract's central purpose or a party's right under a specific contractual provision." *Schiff*, 2020 WL 5077712, at *7 (alteration in original, internal citations and quotation marks omitted). Practically, a breach of the implied covenant of good faith and fair dealing requires the pleader to identify an obligation which supports the written terms of the agreement itself but is not *in haec verba* contained therein. A breach of the implied covenant is not a claim for relief separate from one for breach of contract; rather, it is, itself, a breach of contract. *Trahan v. Lazar*, 457 F. Supp. 3d 323, 358 (S.D.N.Y. 2020) (quoting *Fishoff*, 634 F.3d at 653); *see also Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 205 (S.D.N.Y. 2011).

The Fourth Claim for Relief alleges that Defendant breached the implied covenant of good faith and fair dealing "by preventing Skanska from performing its obligations under the MSA/Precon SOW" and "withh[olding] from Skanska benefits that Skanska was entitled to under the MSA and/or Precon SOW," which resulted in additional work and delay costs amounting to $4,000,000. (Compl. ¶¶ 206, 218-222). Defendant argues that this claim should be dismissed as duplicative of the breach of contract claims. (Def. Br. at 19-20). Plaintiff responds that the Fourth Claim for Relief, which concerns the "fundamental allegation that Regeneron frustrated the

purpose of the controlling contracts and inhibited. . . Skanska's performance," survives because it is distinct and independent from the First and Second Claims for Relief, which center on "nonpayment by Regeneron." (Pl. Br. at 22-23).

"New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013). "Therefore, when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *Id*. The Fourth Claim for Relief alleges that Defendant prevented Plaintiff's performance by: (1) failing to issue ATPs; (2) revising construction drawings without justification; and (3) unilaterally halting the bidding process for certain portions of the Project. (*Id*. ¶¶ 207-214). These same allegations are asserted with respect to the Second Claim for Relief for breach of contract. (*Id*. ¶ 181) ("Failing to issue ATPs to Skanska"; "Revising and/or re-issuing construction drawings"; "placing holds on the procurement/bidding process."). Additionally, the Fourth Claim for Relief alleges that Defendant withheld contract benefits by "requesting that Skanska perform Additional Services but then refusing to respond to Change Event Notices, change order requests, and other notifications." (*Id*. ¶¶ 215-216). The First Claim for Relief is premised on the same allegations that Defendant requested Additional Services and then ignored notices and requests for Change Orders. (*Id*. ¶¶ 167-175). Therefore, Plaintiff's Fourth Claim for Relief arises from the same facts as its breach of contract claims.

Moreover, a claim for relief to recover damages for breach of the implied covenant "cannot be maintained" where "the alleged breach is intrinsically tied to the damages allegedly resulting from a breach of the contract." *Deer Park Enters., LLC v. Ail Sys., Inc.*, 870 N.Y.S.2d 89, 90 (2d

9


Dep't 2008). Plaintiff attempts to distinguish the Fourth Claim for Relief on the basis that it seeks consequential damages in the form of lost profits which are not sought in the First and Second Claims for Relief. (Pl. Br. at 23-24; Compl. ¶ 217). However, the MSA bars consequential damages.[4] (Reply at 11-12). This contractual limitation on liability applies to the good faith and fair dealing claim to the same extent it applies to breach of contract claims. *See Barrie House Coffee Co. v. Teampac, LLC*, No. 13-CV-08230, 2016 WL 3645199, at *12 (S.D.N.Y. June 30, 2016). Because consequential damages are unavailable and the actual damages sought in the Fourth Claim for Relief are duplicative of those sought in the First and Second Claims for Relief (Compl. ¶¶ 176-177, 187, 219, 222), Plaintiff has not established a different basis for damages. Accordingly, the Fourth Claim for Relief is dismissed as it is redundant of Plaintiff's breach of contract claims. *See e.g., Creaven v. Erickson*, No. 22-874-CV, 2023 WL 4247213, at *5 (2d Cir. June 29, 2023) ("[B]ecause the claim for breach of the implied covenant of good faith and fair dealing . . . is based on the same facts as [the] claim[s] for breach of contract, and Plaintiff fails to identify a different basis for damages, the implied covenant claim should [be] dismissed as redundant.") (internal quotations omitted).

III.   Fifth Claim for Relief: Breach of the Covenant of Good Faith and Fair Dealing (Construction Phase)

The Fifth Claim for Relief alleges that Defendant breached the implied covenant of good faith and fair dealing by "failing to negotiate the terms of remaining Construction SOWs in good faith." (Compl. ¶ 240). Specifically, the Complaint alleges that Defendant imposed: (1) terms and

---

[4] The MSA states in pertinent part: "Other than as expressly stated herein and except to the extent arising from or as it relates to . . . (b) a Party's gross negligence, intentional or willful misconduct, . . . under no circumstances shall either Party be liable to the other Party for any indirect or consequential damages to the extent arising under this Agreement." (MSA § 43.1.). Under this provision, recovery for "intentional and willful misconduct" only applies where the MSA explicitly provides for consequential damages. (Reply at 11). Plaintiff has not identified any such provision of the MSA here.

conditions which are impossible to achieve; (2) deceitful negotiation tactics; and (3) varying definitions of the commercial model. (*Id*. ¶ 239).

Defendant first argues that Plaintiff failed to allege an obligation in the MSA that requires the parties to negotiate the Construction phase SOWs, and therefore there is no basis for implying an obligation to negotiate the Construction phase SOWs in good faith. (Def. Br at 13; Reply at 5). Plaintiff responds that "[t]he MSA by explicit reference required the negotiation of a Construction SOW . . . ." (Pl. Br. at 8, 12 (citing MSA §§ 1.1.10, 1.1.21, 1.1.22, 1.2, 4.1, 5.1, 5.2.1, 6.1, 6.2, 7.1, 8.1.1, 8.2.1, 8.2.3, 8.2.4, 8.2.5, 40.2.13, 44.1, Exs. A.1 and A.3)). However, while the MSA clearly contemplates that the parties would execute SOWs as the Project progressed (Compl. ¶ 189), none of the contractual provisions cited by Plaintiff impose an obligation to negotiate the Construction phase SOWs. At their core, the cited provisions prepare the parties for the possibility that they will negotiate and enter into Construction phase SOWs. They do not require the parties to do so.

Moreover, the parties' obligations under the MSA and Precon SOW were not "conditioned on the negotiation of future agreements" such that the parties were "obliged to negotiate [those future agreements] in good faith." *IDT Corp. v. Tyco Grp., S.A.R.L.*, 15 N.E.3d 329, 331-32 (N.Y. 2014); *see also McGowan v. Clarion Partners, LLC*, 132 N.Y.S.3d 281, 282 (App. Div. 2020). The MSA clearly delineated the Preconstruction and Constructions phases and referenced the Construction phase provisions as only potentially applicable. (*See i.e.,* MSA § 1.1.27 ("'Project' means, in each case, the site(s), building(s), facility(ies), furniture/fixtures/equipment and other improvements designed by the Design Professional(s) as to which Construction Manager is to provide Preconstruction Phase Services, and *if applicable*, Construction Phase Services, under an applicable Services Agreement with Regeneron, and is more generally identified in the applicable SOW") (emphasis added))). Plaintiff fails to specify how the MSA or Precon SOW were

11

conditioned on negotiation of Construction phase SOWs. (Pl. Br. at 12). Accordingly, because there is no obligation to negotiate the Construction phase SOWs, there is no basis on which to find an implied covenant to negotiate the Construction phase SOWs in good faith.[5]

Accordingly, the motion is granted as to the Fifth Claim for Relief.

## **CONCLUSION**

Based upon the foregoing, Defendant's motion to dismiss the Third, Fourth, and Fifth Claims for Relief is GRANTED.


**SO ORDERED:**

_____
Philip M. Halpern
United States District Judge

Dated: White Plains, New York
       July 1, 2024

---

[5] Given the Court's conclusion herein, it need not and does not reach Defendant's alternative arguments for dismissal of the Fifth Claim for Relief: (i) failure to allege bad faith negotiations; (ii) duplicative of the breach of contract claims; and (iii) failure to allege damages that are independent from the breach of contract claims. (Def. Br. at 7).

12