UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SKANSKA USA BUILDING INC., | Case No. 7:23-cv-08418-PMH |
| Plaintiff, | **DEFENDANT** |
| -against- | **REGENERON** |
| | **PHARMACEUTICALS,** |
| REGENERON PHARMACEUTICALS, INC., and SHAWN'S LAWN INC., | **INC.'S ANSWER TO FIRST** |
| | **AMENDED COMPLAINT** |
| Defendants. | **WITH COUNTERCLAIMS** |

Defendant Regeneron Pharmaceuticals, Inc. ("Regeneron"), by its attorneys Yankwitt LLP, hereby answers the claims asserted by Plaintiff Skanska USA Building Inc. ("Plaintiff" or "Skanska") in the first amended complaint dated July 29, 2024 (the "FAC") as follows.

## ANSWER TO FIRST AMENDED COMPLAINT

### PRELIMINARY STATEMENT

1.    Regeneron denies the allegations contained in Paragraph 1 of the FAC.

2.    Regeneron denies the allegations contained in Paragraph 2 of the FAC.

3.    Regeneron denies the allegations contained in Paragraph 3 of the FAC.

4.    Regeneron denies the allegations contained in Paragraph 4 of the FAC.

### PARTIES

5.    Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5 of the FAC.

6.    Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6 of the FAC.

7.    Regeneron admits the allegations contained in Paragraph 7 of the FAC that it is a New York corporation with its principal place of business at 777 Old Saw Mill River Road,

Tarrytown, New York, and denies the remaining allegations of Paragraph 7 of the FAC except admits that it is a leading biotechnology company that invents, develops and commercializes life-transforming medicines for people with serious diseases.

8.      Regeneron denies the allegations contained in Paragraph 8 of the FAC except admits that it is a leading biotechnology company that invents, develops and commercializes life-transforming medicines for people with serious diseases.

9.      Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 of the FAC.

## JURISDICTION AND VENUE

10.     Paragraph 10 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 10 of the FAC.

11.     Paragraph 11 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 11 of the FAC.

12.     Paragraph 12 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron refers to the written agreements for their true and complete terms.

13.     Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 of the FAC.

## FACTS COMMON TO ALL COUNTS

14.     Regeneron denies the allegations contained in Paragraph 14 of the FAC except admits that it retained Torcon, Inc. ("Torcon") as construction manager in 2020.

15.    Regeneron denies the allegations contained in Paragraph 15 of the FAC.

16.    Regeneron denies the allegations contained in Paragraph 16 of the FAC except admits the existence of the Master Services Agreement ("MSA") and refers to that document for its true and complete terms.

17.    Paragraph 17 contains Plaintiff's characterization of Statements of Work ("SOWs"), for which no response is required.  To the extent a response is required, Regeneron refers to the SOWs for their true and complete terms.

18.    Regeneron denies the allegations contained in Paragraph 18 of the FAC and refers to the MSA and the referenced SOWs for their true and complete terms.

19.    Paragraph 19 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron refers to the MSA and SOWs for their true and complete terms.

20.    Regeneron denies the allegations contained in Paragraph 20 of the FAC and refers to the MSA for its true and complete terms.

21.    Regeneron denies the allegations contained in Paragraph 21 of the FAC and refers to the MSA for its true and complete terms.

22.    Regeneron denies the allegations contained in Paragraph 22 of the FAC and refers to the MSA for its true and complete terms.

23.    Paragraph 23 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 23 of the FAC and refers to the referenced documents for their true and complete terms.

24.    Regeneron denies the allegations contained in Paragraph 24 of the FAC except admits that Plaintiff's obligations were set forth in the MSA and agreements between the parties.

25.    Regeneron admits the allegations contained in Paragraph 25 of the FAC.

26.    Regeneron admits the allegations contained in Paragraph 26 of the FAC.

27.    Regeneron denies the allegations contained in Paragraph 27 of the FAC.

28.    Regeneron denies the allegations contained in Paragraph 28 of the FAC.

29.    Regeneron denies the allegations contained in Paragraph 29 of the FAC except admits that Regeneron sought a different construction manager for the construction phase of the Project after negotiations with Skanska over the Construction Phase SOWs were unsuccessful.

30.    Regeneron denies the allegations contained in Paragraph 30of the FAC, including those set forth in the footnote in Paragraph 30, except admits that Plaintiff had obligations under the Precon SOW.[1]

31.    Paragraph 31 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron refers to the MSA and SOWs for their true and complete terms.

32.    Regeneron denies the allegations contained in Paragraph 32 of the FAC except admits that among other consultants, Regeneron contracted with FLAD, BRA, and JMC.

33.    Paragraph 33 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 33 of the FAC.

34.    Regeneron admits that Paragraph 34 accurately quotes from the MSA and refers to that document for its true and complete terms.

---

[1] Capitalized terms herein have the meaning defined to them in the FAC, unless otherwise indicated.

35.     Paragraph 35 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron refers to the MSA for its true and complete terms.

36.     Regeneron admits that Paragraph 36 contains an excerpt of Section 5.2.1(b) of the MSA and refers to that document for its true and complete terms.

37.     Paragraph 37 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron refers to the referenced documents in Paragraph 37 of the FAC for their true and complete terms.

38.     Regeneron admits that Paragraph 38 contains an excerpt of the MSA and refers to that document for its true and complete terms.

39.     Paragraph 39 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron refers to the MSA for its true and complete terms.

40.     Paragraph 40 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron refers to the MSA for its true and complete terms.

41.     Paragraph 41 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron refers to the MSA for its true and complete terms.

42.     Paragraph 42 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron refers to the MSA for its true and complete terms.

43.     Paragraph 43 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 43 of the FAC except admits that the MSA sets forth a process for a Change Order, as that term is defined in the MSA, and refers to the MSA for its true and complete terms.

44.     Paragraph 44 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 44 of the FAC and refers to the MSA for its true and complete terms.

45.     Paragraph 45 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 45 of the FAC except admits that there is a schedule for preconstruction services in the Precon SOW and refers to the referenced documents for their true and complete terms.

46.     Paragraph 46 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 46 of the FAC except admits that Article 47 of the MSA is entitled "Termination" and refers to the MSA for its true and complete terms.

47.     Paragraph 47 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 47 of the FAC except admits that Article 47 of the MSA is entitled "Termination" and refers to the MSA for its true and complete terms.

48.     Paragraph 48 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 48 of the FAC except admits that Article 47 of the MSA is entitled "Termination" and refers to the MSA for its true and complete terms.

49.     Paragraph 49 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron refers to the MSA for its true and complete terms.

50.     Paragraph 50 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron refers to the MSA for its true and complete terms.

51.     Paragraph 51 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron refers to the MSA for its true and complete terms.

52.     Paragraph 52 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron refers to the MSA for its true and complete terms.

53.     Paragraph 53 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron refers to the MSA for its true and complete terms.

54.     Regeneron admits the allegations contained in Paragraph 54 of the FAC.

55.     Regeneron admits the allegations contained in Paragraph 55 of the FAC.

56.     Paragraph 56 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron refers to the Precon SOW for its true and complete terms.

57.     Paragraph 57 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron refers to the Precon SOW for a true and complete description of preconstruction phase services.

58.     Paragraph 58 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 58 of the FAC and refers to the referenced documents for their true and complete terms.

59.     Paragraph 59 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 59 of the FAC.

60.     Paragraph 60 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron refers to the Precon SOW for its true and complete terms.

61.     Paragraph 61 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron refers to the Precon SOW for its true and complete terms.

62.     Paragraph 62 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 62 of the FAC and refers to the Precon SOW for its true and complete terms.

63.     Paragraph 63 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron refers to the Precon SOW for its true and complete terms.

64.     Paragraph 64 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron refers to the agreements between the parties for their true and complete terms.

65.      Paragraph 65 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron refers to the agreements between the parties for their true and complete terms.

66.      Paragraph 66 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron refers to the agreements between the parties for their true and complete terms.

67.      Paragraph 67 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron refers to the Precon SOW for its true and complete terms.

68.      Paragraph 68 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 68 of the FAC and refers to the Precon SOW for its true and complete terms.

69.      Paragraph 69 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 69 of the FAC.

70.      Paragraph 70 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 70 of the FAC.

71.      Paragraph 71 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 71 of the FAC.

72.      Regeneron denies the allegations contained in Paragraph 72 of the FAC.

73.      Regeneron denies the allegations contained in Paragraph 73 of the FAC.

74.     Regeneron denies the allegations contained in Paragraph 74 of the FAC except admits that Regeneron made certain requests for work that were within the scope of the base services Skanska was obligated to provide under the Precon SOW.

75.     Paragraph 75 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron refers to the MSA and Precon SOW for their true and complete terms.

76.     Regeneron admits that Paragraph 76 contains an accurate quote from Article 5.21(p) of the MSA and refers to the MSA for its true and complete terms.

77.     Regeneron denies the allegations contained in Paragraph 77 of the FAC.

78.     Regeneron denies the allegations contained in Paragraph 78 of the FAC except admits that Plaintiff issued extensive letters and/or notices to Regeneron.

79.     Regeneron denies the allegations contained in Paragraph 79 of the FAC except admits that Plaintiff performed services required of it pursuant to the Precon SOW.

80.     Regeneron denies the allegations contained in Paragraph 80 of the FAC except admits that it requested Plaintiff perform work that was within the scope of the base services Plaintiff was obligated to provide under the Precon SOW.

81.     Regeneron denies the allegations contained in Paragraph 81 of the FAC.

82.     Regeneron denies the allegations contained in Paragraph 82 of the FAC.

83.     Regeneron denies the allegations contained in Paragraph 83 of the FAC.

84.     Regeneron denies the allegations contained in Paragraph 84 of the FAC.

85.     Regeneron denies the allegations contained in Paragraph 85 of the FAC except admits that Regeneron received a letter from Skanska dated December 21, 2022, and refers to that letter for its true and complete terms.

86.     Regeneron denies the allegations contained in Paragraph 86 of the FAC except admits that Regeneron responded to Plaintiff's letter referred to in Paragraph 86 of the FAC and refers to that response for its true and complete terms.

87.     Regeneron denies the allegations contained in Paragraph 87 of the FAC except admits that Regeneron sent Skanska a letter dated April 17, 2023, and refers to that letter for its true and complete terms.

88.     Regeneron denies the allegations contained in Paragraph 88 of the FAC.

89.     Regeneron denies the allegations contained in Paragraph 89 of the FAC.

90.     Regeneron denies the allegations contained in Paragraph 90 of the FAC.

91.     Regeneron denies the allegations contained in Paragraph 91 of the FAC.

92.     Regeneron denies the allegations contained in Paragraph 92 of the FAC.

93.     Regeneron denies the allegations contained in Paragraph 93 of the FAC.

94.     Regeneron denies the allegations contained in Paragraph 94 of the FAC.

95.     Regeneron denies the allegations contained in Paragraph 95 of the FAC.

96.     Regeneron denies the allegations contained in Paragraph 96 of the FAC.

97.     Regeneron denies the allegations contained in Paragraph 97 of the FAC.

98.     Regeneron denies the allegations contained in Paragraph 98 of the FAC.

99.     Regeneron denies the allegations contained in Paragraph 99 of the FAC.

100.     Regeneron denies the allegations contained in Paragraph 100 of the FAC except admits that there are various parties involved in the Preconstruction Phase of the Project.

101.     Regeneron denies the allegations contained in Paragraph 101 of the FAC except admits that there are many elements of the Preconstruction Phase of the Project.

102.     Paragraph 102 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 102 of the FAC and refers to the Precon SOW for its true and complete terms.

103.     Regeneron denies the allegations contained in Paragraph 103 of the FAC.

104.     Regeneron denies the allegations contained in Paragraph 104 of the FAC.

105.     Regeneron admits the allegations contained in Paragraph 105 of the FAC.

106.     Regeneron denies the allegations contained in Paragraph 106 of the FAC.

107.     Regeneron denies the allegations contained in Paragraph 107 of the FAC.

108.     Regeneron denies the allegations contained in Paragraph 108 of the FAC.

109.     Regeneron denies the allegations contained in Paragraph 109 of the FAC.

110.     Regeneron denies the allegations contained in Paragraph 110 of the FAC.

111.     Regeneron denies the allegations contained in Paragraph 111 of the FAC.

112.     Regeneron denies the allegations contained in Paragraph 112 of the FAC.

113.     Regeneron denies the allegations contained in Paragraph 113 of the FAC.

114.     Regeneron denies the allegations contained in Paragraph 114 of the FAC.

115.     Regeneron denies the allegations contained in Paragraph 115 of the FAC except admits that Plaintiff issued extensive letters and/or notices to Regeneron, some of which alleged that there were Cost Change Events.

116.     Regeneron denies the allegations contained in Paragraph 116 of the FAC except admits that Regeneron has no responsibility to pay Plaintiff for these costs.

117.     Regeneron denies the allegations contained in Paragraph 117 of the FAC.

118.     Regeneron denies the allegations contained in Paragraph 118 of the FAC.

119.    In a decision dated July 1, 2024, ECF No. 42, this Court dismissed Skanska's Fifth Claim for Relief asserted in its original complaint, ECF No. 1, to which claim the allegations in Paragraph 119 of the FAC relate.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 119 of the FAC except admits that Regeneron and Plaintiff were in negotiations regarding the Phase 1 Construction Phase SOWs starting in or around November 2022, which negotiations ended as a result of Skanska's conduct.

120.    In a decision dated July 1, 2024, ECF No. 42, this Court dismissed Skanska's Fifth Claim for Relief asserted in its original complaint, ECF No. 1, to which claim the allegations in Paragraph 120 of the FAC relate.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 120 of the FAC.

121.    In a decision dated July 1, 2024, ECF No. 42, this Court dismissed Skanska's Fifth Claim for Relief asserted in its original complaint, ECF No. 1, to which claim the allegations in Paragraph 121 of the FAC relate.  In addition, Paragraph 121 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron refers to the MSA and Construction Phase SOWs for their true and complete terms.

122.    In a decision dated July 1, 2024, ECF No. 42, this Court dismissed Skanska's Fifth Claim for Relief asserted in its original complaint, ECF No. 1, to which claim the allegations in Paragraph 122 of the FAC relate.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 122 of the FAC.

123.    In a decision dated July 1, 2024, ECF No. 42, this Court dismissed Skanska's Fifth Claim for Relief asserted in its original complaint, ECF No. 1, to which claim the allegations in Paragraph 123 of the FAC relate.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 123 of the FAC.

124.    In a decision dated July 1, 2024, ECF No. 42, this Court dismissed Skanska's Fifth Claim for Relief asserted in its original complaint, ECF No. 1, to which claim the allegations in Paragraph 124 of the FAC relate.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 124 of the FAC.

125.    In a decision dated July 1, 2024, ECF No. 42, this Court dismissed Skanska's Fifth Claim for Relief asserted in its original complaint, ECF No. 1, to which claim the allegations in Paragraph 125 of the FAC relate.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 125 of the FAC.

126.    In a decision dated July 1, 2024, ECF No. 42, this Court dismissed Skanska's Fifth Claim for Relief asserted in its original complaint, ECF No. 1, to which claim the allegations in Paragraph 126 of the FAC relate.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 126 of the FAC.

127.    In a decision dated July 1, 2024, ECF No. 42, this Court dismissed Skanska's Fifth Claim for Relief asserted in its original complaint, ECF No. 1, to which claim the allegations in Paragraph 127 of the FAC relate.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 127 of the FAC.

128.    In a decision dated July 1, 2024, ECF No. 42, this Court dismissed Skanska's Fifth Claim for Relief asserted in its original complaint, ECF No. 1, to which claim the allegations in Paragraph 128 of the FAC relate.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 128 of the FAC.

129.    In a decision dated July 1, 2024, ECF No. 42, this Court dismissed Skanska's Fifth Claim for Relief asserted in its original complaint, ECF No. 1, to which claim the allegations in

Paragraph 129 of the FAC relate. To the extent a response is required, Regeneron denies the allegations contained in Paragraph 129 of the FAC.

130. In a decision dated July 1, 2024, ECF No. 42, this Court dismissed Skanska's Fifth Claim for Relief asserted in its original complaint, ECF No. 1, to which claim the allegations in Paragraph 130 of the FAC relate. To the extent a response is required, Regeneron denies the allegations contained in Paragraph 130 of the FAC.

131. In a decision dated July 1, 2024, ECF No. 42, this Court dismissed Skanska's Fifth Claim for Relief asserted in its original complaint, ECF No. 1, to which claim the allegations in Paragraph 131 of the FAC relate. To the extent a response is required, Regeneron denies the allegations contained in Paragraph 131 of the FAC.

132. In a decision dated July 1, 2024, ECF No. 42, this Court dismissed Skanska's Fifth Claim for Relief asserted in its original complaint, ECF No. 1, to which claim the allegations in Paragraph 132 of the FAC relate. To the extent a response is required, Regeneron denies the allegations contained in Paragraph 132 of the FAC.

133. In a decision dated July 1, 2024, ECF No. 42, this Court dismissed Skanska's Fifth Claim for Relief asserted in its original complaint, ECF No. 1, to which claim the allegations in Paragraph 133 of the FAC relate. To the extent a response is required, Regeneron denies the allegations contained in Paragraph 133 of the FAC except admits that Plaintiff has provided certain procurement and construction schedules to Regeneron.

134. In a decision dated July 1, 2024, ECF No. 42, this Court dismissed Skanska's Fifth Claim for Relief asserted in its original complaint, ECF No. 1, to which claim the allegations in Paragraph 134 of the FAC relate. To the extent a response is required, Regeneron denies the allegations contained in Paragraph 134 of the FAC.

135.    In a decision dated July 1, 2024, ECF No. 42, this Court dismissed Skanska's Fifth Claim for Relief asserted in its original complaint, ECF No. 1, to which claim the allegations in Paragraph 135 of the FAC relate.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 135 of the FAC.

136.    In a decision dated July 1, 2024, ECF No. 42, this Court dismissed Skanska's Fifth Claim for Relief asserted in its original complaint, ECF No. 1, to which claim the allegations in Paragraph 136 of the FAC relate.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 136 of the FAC.

137.    Regeneron denies the allegations contained in Paragraph 137 of the FAC except admits that Regeneron insisted that Skanska comply with its obligations under the agreements between the parties.

138.    Regeneron denies the allegations contained in Paragraph 138 of the FAC except admits that counsel for Regeneron sent counsel for Plaintiff a letter dated September 19, 2023 and refers to that letter for its true and complete terms.

139.    Regeneron denies the allegations contained in Paragraph 139 of the FAC.

140.    Regeneron denies the allegations contained in Paragraph 140 of the FAC.

141.    Regeneron denies the allegations contained in Paragraph 141 of the FAC.

142.    Regeneron denies the allegations contained in Paragraph 142 of the FAC.

143.    Regeneron denies the allegations contained in Paragraph 143 of the FAC.

144.    Regeneron denies the allegations contained in Paragraph 144 of the FAC except admits that the Sitework SOW was dated July 22, 2022.

145.    Regeneron denies the allegations contained in Paragraph 145 of the FAC except admits that on or about January 23, 2023, Skanska issued the Approval Form and refers to the Approval Form for its true and complete terms.

146.    Regeneron denies the allegations contained in Paragraph 146 of the FAC except admits that on or about January 23, 2023, Skanska issued the Approval Form and refers to the Approval Form for its true and complete terms.

147.    Regeneron denies the allegations contained in Paragraph 147 of the FAC except admits that on or about January 23, 2023, Skanska issued the Approval Form and refers to the Approval Form for its true and complete terms.

148.    Regeneron admits the allegations contained in Paragraph 148 of the FAC.

149.    Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 149 of the FAC.

150.    Regeneron denies the allegations contained in Paragraph 150 of the FAC but admits the details set forth in the January 27, 2023 letter from Regeneron to Skanska.

151.    Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 151 of the FAC.

152.    Regeneron denies the allegations contained in Paragraph 152 of the FAC except admits that it sent a letter to Plaintiff dated January 27, 2023 and refers to that document for its true and complete terms.

153.    Regeneron denies the allegations contained in Paragraph 153 of the FAC except admits that it sent a letter to Plaintiff dated January 27, 2023 and refers to that document for its true and complete terms.

154.    Regeneron denies the allegations contained in Paragraph 154 of the FAC except admits that it sent a letter to Plaintiff dated January 27, 2023 and refers to that document for its true and complete terms.

155.    Regeneron denies the allegations contained in Paragraph 155 of the FAC.

156.    Regeneron denies the allegations contained in Paragraph 156 of the FAC.

157.    Regeneron denies the allegations contained in Paragraph 157 of the FAC.

158.    Regeneron denies the allegations contained in Paragraph 158 of the FAC.

159.    Regeneron denies the allegations contained in Paragraph 159 of the FAC.

160.    Regeneron denies the allegations contained in Paragraph 160 of the FAC except admits that Plaintiff informed Regeneron that it intended to advise the Township of Greenburgh that it would remove its name from pending permit applications.

161.    Regeneron denies the allegations contained in Paragraph 161 of the FAC.

162.    Regeneron denies the allegations contained in Paragraph 162 of the FAC except admits that counsel for Regeneron sent counsel for Plaintiff a letter dated September 19, 2023 and refers to that document for its true and complete terms.

163.    Regeneron denies the allegations contained in Paragraph 163 of the FAC.

164.    Regeneron denies the allegations contained in Paragraph 164 of the FAC.

165.    Regeneron denies the allegations contained in Paragraph 165 of the FAC except admits that counsel for Regeneron sent counsel for Plaintiff a letter dated September 19, 2023 and refers to that document for its true and complete terms.

166.    Regeneron denies the allegations contained in Paragraph 166 of the FAC.

167.    Regeneron denies the allegations contained in Paragraph 167 of the FAC.

168.    Regeneron denies the allegations contained in Paragraph 168 of the FAC.

169.     Regeneron denies the allegations contained in Paragraph 169 of the FAC.

170.     Regeneron denies the allegations contained in Paragraph 170 of the FAC except admits that Paragraph 170 accurately quotes from the Sitework SOW and refers to the Sitework SOW for its true and complete terms.

171.     Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 171 of the FAC except admits upon information and belief that Skanska retained SLI to perform work contemplated under the Sitework SOW.

172.     Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 172 of the FAC.

173.     Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 173 of the FAC.

174.     Regeneron denies the allegations contained in Paragraph 174 of the FAC.

175.     Regeneron denies the allegations contained in Paragraph 175 of the FAC.

176.     Regeneron denies the allegations contained in Paragraph 176 of the FAC except admits that Skanska sent Regeneron a letter dated January 2, 2024, and refers to that document for its true and complete terms.

177.     Regeneron denies the allegations contained in Paragraph 177 of the FAC.

178.     Regeneron denies the allegations contained in Paragraph 178 of the FAC.

179.     Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 179 of the FAC.

180.     Regeneron denies the allegations contained in Paragraph 180 of the FAC.

181.    Regeneron denies the allegations contained in Paragraph 181 of the FAC except admits that Skanska stated in communications to Regeneron that it intended to demobilize from the Project no later than April 30, 2024.

182.    Regeneron denies the allegations contained in Paragraph 182 of the FAC except admits that Skanska sent Regeneron a letter dated February 9, 2024, and refers to that letter for its true and complete terms.

183.    Regeneron denies the allegations contained in Paragraph 183 of the FAC except admits that Skanska sent Regeneron a letter dated February 16, 2024, and refers to that letter for its true and complete terms.

184.    Regeneron denies the allegations contained in Paragraph 184 of the FAC.

185.    Regeneron denies the allegations contained in Paragraph 185 of the FAC except admits that the parties discussed transitioning Skanska off the Project.

186.    Regeneron denies the allegations contained in Paragraph 186 of the FAC.

187.    Regeneron denies the allegations contained in Paragraph 187 of the FAC except admits that Skanska sent Regeneron a letter dated March 29, 2024, and refers to that letter for its true and complete terms.

188.    Regeneron denies the allegations contained in Paragraph 188 of the FAC except admits that Skanska sent Regeneron a letter dated March 29, 2024, and refers to that letter for its true and complete terms.

189.    Regeneron denies the allegations contained in Paragraph 189 of the FAC.

190.    Regeneron denies the allegations contained in Paragraph 190 of the FAC.

191.    Regeneron denies the allegations contained in Paragraph 191 of the FAC except admits that on or about April 1, 2024, Skanska requested a meeting with Regeneron.

192.    Regeneron admits the allegations contained in Paragraph 192 of the FAC.

193.    Regeneron denies the allegations contained in Paragraph 193 of the FAC except admits that representatives of Regeneron met with representatives of Skanska on April 16, 2024.

194.    Regeneron denies the allegations contained in Paragraph 194 of the FAC except denies knowledge or information sufficient to form a belief as to the truth of the allegation relating to Skanska's intent.

195.    The allegations contained in Paragraph 195 of the FAC are subject to a confidentiality agreement between Skanska and Regeneron and a request to file a motion to strike currently pending before the Court.  To the extent a response to Paragraph 195 of the FAC is required, Regeneron denies the allegations in Paragraph 195 of the FAC and refers to the referenced communication for its true and complete terms.

196.    The allegations contained in Paragraph 196 of the FAC are subject to a confidentiality agreement between Skanska and Regeneron and a request to file a motion to strike currently pending before the Court.  To the extent a response to Paragraph 196 of the FAC is required, Regeneron denies the allegations in Paragraph 196 of the FAC.

197.    The allegations contained in Paragraph 197 of the FAC are subject to a confidentiality agreement between Skanska and Regeneron and a request to file a motion to strike currently pending before the Court.  To the extent a response to Paragraph 197 of the FAC is required, Regeneron denies the allegations contained in Paragraph 197 of the FAC and refers to the referenced communication for its true and complete terms.

198.    The allegations contained in Paragraph 198 of the FAC are subject to a confidentiality agreement between Skanska and Regeneron and a request to file a motion to strike currently pending before the Court.  To the extent a response to Paragraph 198 of the FAC is

required, Regeneron denies the allegations contained in Paragraph 198 of the FAC and refers to the referenced communication for its true and complete terms.

199.    The allegations contained in Paragraph 199 of the FAC are subject to a confidentiality agreement between Skanska and Regeneron and a request to file a motion to strike currently pending before the Court.  To the extent a response to Paragraph 199 of the FAC is required, Regeneron denies the allegations contained in Paragraph 199 of the FAC and refers to the referenced communication for its true and complete terms.

200.    The allegations contained in Paragraph 200 of the FAC are subject to a confidentiality agreement between Skanska and Regeneron and a request to file a motion to strike currently pending before the Court.  To the extent a response to Paragraph 200 of the FAC is required, Regeneron denies the allegations contained in Paragraph 200 of the FAC and refers to the referenced communication for its true and complete terms.

201.    The allegations contained in Paragraph 201 of the FAC are subject to a confidentiality agreement between Skanska and Regeneron and a request to file a motion to strike currently pending before the Court.  To the extent a response to Paragraph 201 of the FAC is required, Regeneron denies the allegations contained in Paragraph 201 of the FAC and refers to the referenced communication for its true and complete terms.

202.    The allegations contained in Paragraph 202 of the FAC are subject to a confidentiality agreement between Skanska and Regeneron and a request to file a motion to strike currently pending before the Court.  To the extent a response to Paragraph 202 of the FAC is required, Regeneron denies the allegations contained in Paragraph 202 of the FAC and refers to the referenced communication for its true and complete terms.

203.    The allegations contained in Paragraph 203 of the FAC are subject to a confidentiality agreement between Skanska and Regeneron and a request to file a motion to strike currently pending before the Court.  To the extent a response to Paragraph 203 of the FAC is required, Regeneron denies the allegations contained in Paragraph 203 of the FAC and refers to the referenced communication for its true and complete terms.

204.    The allegations contained in Paragraph 204 of the FAC are subject to a confidentiality agreement between Skanska and Regeneron and a request to file a motion to strike currently pending before the Court.  To the extent a response to Paragraph 204 of the FAC is required, Regeneron denies the allegations contained in Paragraph 204 of the FAC.

205.    The allegations contained in Paragraph 205 of the FAC are subject to a confidentiality agreement between Skanska and Regeneron and a request to file a motion to strike currently pending before the Court.  To the extent a response to Paragraph 205 of the FAC is required, Regeneron denies the allegations contained in Paragraph 205 of the FAC.

206.    The allegations contained in Paragraph 206 of the FAC are subject to a confidentiality agreement between Skanska and Regeneron and a request to file a motion to strike currently pending before the Court.  To the extent a response to Paragraph 206 of the FAC is required, Regeneron denies the allegations contained in Paragraph 206 of the FAC.

207.    The allegations contained in Paragraph 207 of the FAC are subject to a confidentiality agreement between Skanska and Regeneron and a request to file a motion to strike currently pending before the Court.  To the extent a response to Paragraph 207 of the FAC is required, Regeneron denies the allegations contained in Paragraph 207 of the FAC.

208.    The allegations contained in Paragraph 208 of the FAC are subject to a confidentiality agreement between Skanska and Regeneron and a request to file a motion to strike

currently pending before the Court.  To the extent a response to Paragraph 208 of the FAC is required, Regeneron denies the allegations contained in Paragraph 208 of the FAC.

209.    The allegations contained in Paragraph 209 of the FAC are subject to a confidentiality agreement between Skanska and Regeneron and a request to file a motion to strike currently pending before the Court.  To the extent a response to Paragraph 209 of the FAC is required, Regeneron denies the allegations contained in Paragraph 209 of the FAC.

210.    The allegations contained in Paragraph 210 of the FAC are subject to a confidentiality agreement between Skanska and Regeneron and a request to file a motion to strike currently pending before the Court.  To the extent a response to Paragraph 210 of the FAC is required, Regeneron denies the allegations contained in Paragraph 210 of the FAC.

211.    The allegations contained in Paragraph 211 of the FAC are subject to a confidentiality agreement between Skanska and Regeneron and a request to file a motion to strike currently pending before the Court.  To the extent a response to Paragraph 211 of the FAC is required, Regeneron denies the allegations contained in Paragraph 211 of the FAC.

212.    Regeneron denies the allegations contained in Paragraph 212 of the FAC.

213.    Regeneron denies the allegations contained in Paragraph 213 of the FAC except admits that Skanska authorized Regeneron to meet with SLI.

214.    Regeneron denies the allegations contained in Paragraph 214 of the FAC.

215.    Regeneron denies the allegations contained in Paragraph 215 of the FAC.

216.    Regeneron denies the allegations contained in Paragraph 216 of the FAC.

217.    Regeneron denies the allegations contained in Paragraph 217 of the FAC.

218.    Regeneron denies the allegations contained in Paragraph 218 of the FAC.

219.    Regeneron denies the allegations contained in Paragraph 219 of the FAC.

220.     Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 220 of the FAC.

221.     Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 221 of the FAC except admits that Skanska sent Regeneron a letter dated April 30, 2024 and refers to that document for its true and complete terms.

222.     Regeneron denies the allegations contained in Paragraph 222 of the FAC except admits that Regeneron's counsel communicated to Skanska that it received Skanska's April 30, 2024 communication.

223.     Regeneron denies the allegations contained in Paragraph 223 of the FAC except admits that Regeneron denied all wrongdoing and refers to the referenced communication for its true and complete terms.

224.     Regeneron denies the allegations contained in Paragraph 224 of the FAC except admits that it sent Skanska a letter dated May 3, 2024 in which it terminated the Sitework SOW for cause and refers to that document for its true and complete terms.

225.     Regeneron denies the allegations contained in Paragraph 225 of the FAC.

226.     Regeneron denies the allegations contained in Paragraph 226 of the FAC.

227.     Regeneron denies the allegations contained in Paragraph 227 of the FAC.

228.     Regeneron denies the allegations contained in Paragraph 228 of the FAC.

229.     Regeneron denies the allegations contained in Paragraph 229 of the FAC.

230.     Regeneron denies the allegations contained in Paragraph 230 of the FAC and refers to the referenced communication in Paragraph 230 of the FAC for its true and complete terms.

231.     Regeneron denies the allegations contained in Paragraph 231 of the FAC.

232.    Regeneron denies the allegations contained in Paragraph 232 of the FAC.

233.    Regeneron denies the allegations contained in Paragraph 233 of the FAC.

## COUNT I
## BREACH OF CONTRACT
### (*As to Regeneron – Failure To Pay For Additional Services for Preconstruction*)

234.    Regeneron repeats and reincorporates each and every response to the prior allegations as if fully set forth herein.

235.    Paragraph 235 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron admits the existence of the MSA and Precon SOW and refers to those agreements for their true and complete terms.

236.    Regeneron denies the allegations contained in Paragraph 236 of the FAC.

237.    Paragraph 237 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron refers to the MSA and Precon SOW for their true and complete terms.

238.    Paragraph 238 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron refers to the MSA and Precon SOW for their true and complete terms.

239.    Paragraph 239 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 239 of the FAC except admits that the MSA and Precon SOW include provisions for payment to Plaintiff.

240.    Regeneron denies the allegations contained in Paragraph 240 of the FAC.

241.    Regeneron denies the allegations contained in Paragraph 241 of the FAC.

242.    Regeneron denies the allegations contained in Paragraph 242 of the FAC.

243.    Regeneron denies the allegations contained in Paragraph 243 of the FAC.

244.    Regeneron denies the allegations contained in Paragraph 244 of the FAC.

245.    Regeneron denies the allegations contained in Paragraph 245 of the FAC.

246.    Regeneron denies the allegations contained in Paragraph 246 of the FAC.

247.    Regeneron denies the allegations contained in Paragraph 247 of the FAC.

248.    Regeneron denies the allegations contained in Paragraph 248 of the FAC.

249.    Regeneron denies the allegations contained in Paragraph 249 of the FAC.

250.    Regeneron denies the allegations contained in Paragraph 250 of the FAC.

## COUNT II
## BREACH OF CONTRACT
### (*As to Regeneron – Failure To Pay Delay and Impact Costs for Preconstruction*)

251.    Regeneron repeats and reincorporates each and every response to the prior allegations as if fully set forth herein.

252.    Paragraph 252 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron admits the existence of the MSA and Precon SOW and refers to those agreements for their true and complete terms.

253.    Paragraph 253 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 253 of the FAC.

254.    Regeneron denies the allegations contained in Paragraph 254 of the FAC, including all of the subparts of Paragraph 254.

255.    Regeneron denies the allegations contained in Paragraph 255 of the FAC.

256.    Regeneron denies the allegations contained in Paragraph 256 of the FAC.

257.    Regeneron denies the allegations contained in Paragraph 257 of the FAC.

258.    Regeneron denies the allegations contained in Paragraph 258 of the FAC, except admits that Plaintiff is not entitled to any payment for the alleged "delay and impact costs."

259.    Regeneron denies the allegations contained in Paragraph 259 of the FAC.

260.    Regeneron denies the allegations contained in Paragraph 260 of the FAC.

### COUNT III
### BREACH OF CONTRACT
#### (*As to Regeneron – Failure to Pay For Sitework*)

261.    Regeneron repeats and reincorporates each and every response to the prior allegations as if fully set forth herein.

262.    Paragraph 262 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron admits the existence of the MSA and Sitework SOW and refers to those agreements for their true and complete terms.

263.    Regeneron denies the allegations contained in Paragraph 263 of the FAC.

264.    Regeneron denies the allegations contained in Paragraph 264 of the FAC.

265.    Regeneron denies the allegations contained in Paragraph 265 of the FAC.

266.    Regeneron denies the allegations contained in Paragraph 266 of the FAC except admits that the MSA and the Sitework SOW provide the terms and conditions for compensation to Skanska from Regeneron.

267.    Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 267 of the FAC.

268.    Regeneron denies the allegations contained in Paragraph 268 of the FAC.

269.    Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 269 of the FAC except admits upon information and belief, Skanska retained subcontractors in connection with the Project.

270.     Regeneron denies the allegations contained in Paragraph 270 of the FAC.

271.     Regeneron denies the allegations contained in Paragraph 271 of the FAC.

272.     Regeneron denies the allegations contained in Paragraph 272 of the FAC.

273.     Regeneron denies the allegations contained in Paragraph 273 of the FAC.

274.     Regeneron denies the allegations contained in Paragraph 274 of the FAC.

275.     Regeneron denies the allegations contained in Paragraph 275 of the FAC.

**COUNT IV**
**BREACH OF CONTRACT**
(*As to Regeneron – Wrongful Termination*)

276.     Regeneron repeats and reincorporates each and every response to the prior allegations as if fully set forth herein.

277.     Paragraph 277 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron admits the existence of the MSA and refers to that agreement for its true and complete terms.

278.     Paragraph 278 of the FAC contains a legal conclusion to which no response is required.  To the extent a response is required, Regeneron refers to the MSA for its true and complete terms.

279.     Regeneron denies the allegations contained in Paragraph 279 of the FAC except admits the existence of the Precon SOW, the Sitework SOW, and the MSA and refers to those documents for their true and complete terms.

280.     Regeneron denies the allegations contained in Paragraph 280 of the FAC.

281.     Regeneron denies the allegations contained in Paragraph 281 of the FAC.

282.     Regeneron denies the allegations contained in Paragraph 282 of the FAC.

283.     Regeneron denies the allegations contained in Paragraph 283 of the FAC.

284.    Regeneron denies the allegations contained in Paragraph 284 of the FAC except admits the parties discussed a potential May 1, 2024 transition date.

285.    Regeneron denies the allegations contained in Paragraph 285 of the FAC except admits the parties discussed a May 1, 2024 transition date.

286.    Regeneron denies the allegations contained in Paragraph 286 of the FAC.

287.    Regeneron denies the allegations contained in Paragraph 287 of the FAC.

288.    Regeneron denies the allegations contained in Paragraph 288 of the FAC except admits that Skanska sent Regeneron a letter dated April 30, 2024 and refers to that document for its true and complete terms.

289.    Regeneron denies the allegations contained in Paragraph 289 of the FAC except admits that Regeneron sent Skanska a letter dated May 3, 2024 and refers to that document for its true and complete terms.

290.    Regeneron denies the allegations contained in Paragraph 290 of the FAC.

291.    Regeneron denies the allegations contained in Paragraph 291 of the FAC.

292.    Regeneron denies the allegations contained in Paragraph 292 of the FAC.

293.    Regeneron denies the allegations contained in Paragraph 293 of the FAC.

294.    Regeneron denies the allegations contained in Paragraph 294 of the FAC.

295.    Regeneron denies the allegations contained in Paragraph 295 of the FAC.

296.    Regeneron denies the allegations contained in Paragraph 296 of the FAC.

297.    Regeneron denies the allegations contained in Paragraph 297 of the FAC.

298.    Regeneron denies the allegations contained in Paragraph 298 of the FAC.

## COUNT V
## TORTIOUS INTEFERENCE WITH A CONTRACT
### (*As to Regeneron – Tortious Interference with SLI's Subcontract*)

299.    Regeneron repeats and reincorporates each and every response to the prior allegations as if fully set forth herein.

300.    Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 300 of the FAC except admits upon information and belief that Skanska retained SLI to perform work contemplated under the Sitework SOW.

301.    Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 301 of the FAC.

302.    Regeneron denies the allegations contained in Paragraph 302 of the FAC except admits upon information and belief that Skanska engaged SLI to perform work contemplated under the Sitework SOW.

303.    Regeneron denies the allegations contained in Paragraph 303 of the FAC.

304.    The allegations contained in Paragraph 304 of the FAC are subject to a confidentiality agreement between Skanska and Regeneron and a request to file a motion to strike currently pending before the Court.  To the extent a response to Paragraph 199 of the FAC is required, Regeneron denies the allegations contained in Paragraph 304 of the FAC.

305.    The allegations contained in Paragraph 305 of the FAC are subject to a confidentiality agreement between Skanska and Regeneron and a request to file a motion to strike currently pending before the Court.  To the extent a response to Paragraph 199 of the FAC is required, Regeneron denies the allegations contained in Paragraph 305 of the FAC.

306.    Regeneron denies the allegations contained in Paragraph 306 of the FAC.

307.    Regeneron denies the allegations contained in Paragraph 307 of the FAC.

**COUNT VI**
**BREACH OF CONTRACT**
***(As to SLI)***

31

308.     Regeneron repeats and reincorporates each and every response to the prior allegations as if fully set forth herein.

309.     The allegations contained in Paragraph 309 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 309 of the FAC except admits upon information and belief that Skanska engaged SLI to perform work contemplated under the Sitework SOW.

310.     The allegations contained in Paragraph 310 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 310 of the FAC.

311.     The allegations contained in Paragraph 311 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 311 of the FAC.

312.     The allegations contained in Paragraph 312 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 312 of the FAC.

313.     The allegations contained in Paragraph 313 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 313 of the FAC.

314.    The allegations contained in Paragraph 314 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 314 of the FAC.

315.    The allegations contained in Paragraph 315 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 315 of the FAC.

316.    The allegations contained in Paragraph 316 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 316 of the FAC.

317.    The allegations contained in Paragraph 317 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 317 of the FAC.

318.    The allegations contained in Paragraph 318 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 318 of the FAC.

319.    The allegations contained in Paragraph 319 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 319 of the FAC.

## COUNT VII
## INDEMNIFICATION
### (*As to SLI*)

320.    Regeneron repeats and reincorporates each and every response to the prior allegations as if fully set forth herein.

321.    The allegations contained in Paragraph 321 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 321 of the FAC except admits upon information and belief that Skanska engaged SLI to perform work contemplated under the Sitework SOW.

322.    The allegations contained in Paragraph 322 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 322 of the FAC.

323.    The allegations contained in Paragraph 323 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 323 of the FAC.

324.    The allegations contained in Paragraph 324 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 324 of the FAC.

325.    The allegations contained in Paragraph 325 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 325 of the FAC except admits that there was incomplete, untimely, faulty, defective, and/or deficient work and that Skanska is liable to Regeneron for such conditions.

326.     The allegations contained in Paragraph 326 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 326 of the FAC.

327.     The allegations contained in Paragraph 327 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 327 of the FAC except admits that there was incomplete, untimely, faulty, defective, and/or deficient work and that Skanska is liable to Regeneron for such conditions and states that it is withholding payment in accordance with the terms of the agreements between the parties.

328.     The allegations contained in Paragraph 328 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 328 of the FAC except admits that Regeneron is entitled to compensation from Skanska for incomplete and/or defective work.

329.     The allegations contained in Paragraph 329 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 329 of the FAC.

330.     The allegations contained in Paragraph 330 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 330 of the FAC.

331.     The allegations contained in Paragraph 331 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 331 of the FAC.

**COUNT VIII**
**BREACH OF CONTRACT**
(*Hypothetically as to SLI*)

332.    Regeneron repeats and reincorporates each and every response to the prior allegations as if fully set forth herein.

333.    The allegations contained in Paragraph 333 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 333 of the FAC.

334.    The allegations contained in Paragraph 334 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 334 of the FAC.

335.    The allegations contained in Paragraph 335 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 335 of the FAC.

336.    The allegations contained in Paragraph 336 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 336 of the FAC.

337.    The allegations contained in Paragraph 337 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required,

Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 337 of the FAC.

338.    The allegations contained in Paragraph 338 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 338 of the FAC.

339.    The allegations contained in Paragraph 339 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 339 of the FAC.

340.    The allegations contained in Paragraph 340 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 340 of the FAC.

341.    The allegations contained in Paragraph 341 of the FAC are directed to another party, to which no response from Regeneron is required.  To the extent a response is required, Regeneron denies the allegations contained in Paragraph 341 of the FAC.

### **AFFIRMATIVE DEFENSES**

1.    Plaintiff's FAC fails to state a claim upon which relief can be granted.

2.    Plaintiff's FAC is barred under the doctrines of waiver, estoppel, unclean hands and laches.

3.    Plaintiff's FAC is barred, in whole or in part, by reason of Plaintiff's own acts or omissions.

4.    Plaintiff's FAC is barred because Regeneron did not breach any alleged contract or

agreement between the parties.

5.      Plaintiff's FAC is barred because Regeneron acted at all times with proper justification.

6.      Plaintiff's FAC is barred by Plaintiff's failure to mitigate its alleged damages.

7.      Regeneron reserves the right to assert further defenses as they become apparent through discovery.

## COUNTERCLAIMS

Regeneron repeats and realleges each and every allegation contained in the prior paragraphs as if fully set forth herein, and further alleges the following for its Counterclaims against Plaintiff.

## PRELIMINARY STATEMENT

1.      Regeneron is a leading biotechnology company that invents, develops and commercializes life-transforming medicines for people with serious diseases.  To expand its ability to research and develop state of the art and lifesaving pharmaceuticals, Regeneron decided to significantly expand its campus and headquarters in Tarrytown, New York.  The multi-billion dollar campus expansion contemplated the construction of 900,000-square-feet of space, which includes the design and construction of new laboratories, preclinical manufacturing and process development suites, office space, three parking garages, and a central utility plant (the "Project").

2.      Regeneron engaged Skanska USA Building Inc. ("Skanska") to perform construction management services for the Project.  Skanska's scope of work and obligations were set forth in a Master Services Agreement, dated March 23, 2022 (the "MSA"), and two statements of work, the Preconstruction Phase Statement of Work (the "Preconstruction SOW"), dated March 22, 2022, and the Construction Phase Statement of Work for site clearing and blasting (the

"Sitework SOW"), dated July 25, 2022 (the MSA, the Preconstruction SOW, and the Sitework SOW are referred to collectively as, the "Agreements").

3.    From nearly the outset of the parties' relationship and throughout its tenure on the Project, Skanska failed to comply with its contractual obligations under the Agreements and repeatedly acted in bad faith, causing substantial damage to the Project and to Regeneron.

4.    In connection with the Preconstruction SOW, Skanska failed to perform the tasks it had agreed to perform under the Agreements and took actions to the detriment of Regeneron, going so far as to unilaterally remove its name from applications for necessary building permits to the Town of Greenburgh and failing to adequately conduct subcontractor bid processes.

5.    Skanska's conduct under the Sitework SOW was equally wrongful.  Skanska breached its obligations under the MSA and Sitework SOW by (a) improperly overbilling Regeneron by more than $1.4 million for its staffing of the Project, (b) constructing a roadway out of sequence against Regeneron's wishes and in contravention of Skanska's own assessment of the sequencing for the Project, which will cost Regeneron almost $4 million to remedy, and (c) failing to appropriately position and then refusing to relocate piles of construction materials that have impeded the Project's progress and which will cost Regeneron almost $1 million to remedy.

6.    In total, Skanska's breaches of the Agreements have damaged Regeneron in an amount not less than $6 million.

7.    Although this litigation was initiated by Skanska in September 2023 against Regeneron in a complaint in which Skanska seeks compensation based on alleged claims of breach of contract,[2] as detailed herein it is Skanska that must compensate Regeneron for the millions of dollars in damages stemming from Skanska's repeated, egregious breaches of the Agreements.

---

[2] Skanska's claims for (1) declaratory judgment (Third Claim for Relief), (2) breach of the implied covenant of good faith and fair dealing in connection with the preconstruction phase (Fourth Claim for Relief), and (3) breach of the

I.      **Regeneron's Campus Expansion Project and Engagement of Skanska**

8.      In February 2022, Skanska submitted a response to a request for proposal ("RFP") issued by Regeneron for a construction manager to manage the Project. Based on Skanska's proposal, Regeneron selected Skanska to become its construction manager.

9.      On March 3, 2022, Skanska and Regeneron entered into the MSA, which provides for the rights and responsibilities of the parties in connection with Skanska's role as the construction manager for the Project. The MSA contemplated that the parties could, but were not required to, thereafter enter into Statements of Work ("SOWs") for different components of the Project.

A.      **The Master Services Agreement**

10.     The MSA sets a five-year term "commencing on [March 3, 2022]," MSA § 2.1, and lays out the overarching obligations Skanska owes to Regeneron on the Project.

11.     Among those obligations are that Skanska (i) "shall provide all labor, materials, and equipment necessary to complete the Services" (MSA § 3.1); (ii) "shall be responsible for the administration, management, supervision and coordination of the Services, including the means, methods, techniques, sequences, and procedures utilized" (MSA § 3.2); (iii) "shall proceed in good faith and perform their obligations with integrity" (MSA § 3.7); and (iv) "shall perform its work and services expeditiously, with the understanding that time is of the essence, in conformance with this Agreement and all Services Agreements, and comply with all deadlines set forth by Regeneron in writing" (MSA § 3.8.).

12.     Skanska's staffing obligations are also addressed in the MSA. General Conditions are defined in the MSA as "the actual direct Project staffing costs of [Skanska] for the management

---

implied covenant of good faith and fair dealing in connection with negotiations for the construction phase (Fifth Claim for Relief) were dismissed in a decision rendered on July 2, 2024. *See* ECF No. 42.

of the Project . . . ."  (MSA § 1.1.21.)  With respect to compensation, reimbursement for Skanska's General Conditions is limited to "the actual direct Project staffing costs of the Construction Manager for the management of the Project, exclusive of any home office or non-Project related costs.  General Conditions shall be billed on an actual time spent basis in each Application for Payment with backup documentation substantiating the charges as required by Regeneron, *subject to a not to exceed number in the Early Work and Construction Phase SOWs, which may only be adjusted at Regeneron's sole discretion by Change Order.*"  (*Id.* (emphasis added).)

13.     General Conditions costs under the MSA include "wages or salaries of [Skanska's] supervisory and administrative personnel" when working on site or offsite on the Project "with Regeneron's approval at the wage rates established by the SOW."  (*Id.*)

14.     Among other obligations, the MSA requires that with respect to bidding, Skanska "shall conduct bidding on construction and procurement contracts so as to endeavor to achieve maximum competition among qualified bidders in order to obtain the most reasonable price for acceptable Work."  (MSA § 5.2.1(j).)

15.     In accordance with the MSA, Skanska was also obligated to "obtain and pay for all necessary permits, licenses, and renewals pertaining to the Work, except for permits and fees that are the responsibility of Regeneron pursuant to the Contract Documents."  (MSA § 14.1.)

**B.     The Statements of Work**

**1.     The Preconstruction Statement of Work**

16.     On March 22, 2022, the parties entered into the Preconstruction SOW.   In accordance with the MSA, Skanska agreed to provide certain preconstruction phase services, including: (i) preparation of a Project schedule for Regeneron's review and acceptance (MSA § 5.2.1(a)); (ii) preparation of budget control recommendations and detailed construction cost

estimates (MSA § 5.2.1(b)); (iii) review of all construction documents for coordination and constructability, in consultation with Regeneron and the design professionals (MSA § 5.2.1(c)); (iv) procurement of equipment, materials, and supplies (MSA §§ 5.2.1(d) and (g)); (v) review of bidding documents with the design professionals and coordination of the bidding process (including subcontractor bids) to achieve maximum competition among qualified bidders to ensure the most reasonable price (MSA §§ 5.2.1(h), (j), and (l)); (vi) preparation of a construction quality assurance plan (MSA § 5.2.1(i)); and (vii) participation in building information modeling ("BIM") Project meetings and provision of periodic reviews of the design professionals' BIM model to confirm it meets Skanska's requirements (MSA § 5.2.1(m)).

17.     Consistent with the MSA, the Preconstruction SOW provides a description of the Project, a summary table of the Project, and Project milestone event dates.

18.     The Preconstruction SOW also sets forth Skanska's fixed fee compensation for providing all of the Preconstruction Phase Services specified in the MSA and the Preconstruction SOW, in the lump sum amount of $6,576,465.

19.     The lump sum was to be billed on a monthly basis based on actual completion of the preconstruction services for the prior month.  (Preconstruction SOW A.1 SOW Exhibit D.)

## 2.     The Sitework Statement of Work

20.     On July 25, 2022, Skanska and Regeneron entered into the Sitework SOW for Skanska to perform certain services, including, but not limited to, clearing, blasting, excavation and backfill and utility related site work (the "Sitework").

21.     The Sitework SOW required Skanska to "[p]rovide for Regeneron's review and acceptance a critical path Project schedule that coordinates and integrates anticipated Construction

Manager's Services, the Design Professional's services, and Regeneron's input." (Sitework SOW § 1.4.)

22.     Under the Sitework SOW, Skanska was required to give Regeneron notice in writing of any Potential Design Cost Impact ("PDCI"), which included Owner Directed Changes, Unauthorized Changes, Unforeseeable Existing Conditions, and Errors and Omissions, as each are defined in the SOW. (*Id.*)

23.     The Sitework SOW explicitly stated that Skanska agreed that "people performing preconstruction activities are billed separately and not under the [Sitework] SOW." (Sitework SOW § 6.)

24.     As set forth in the Sitework SOW, the Estimated Construction Phase Contract Sum, i.e., the estimated amount to be paid for the Site Work, was $76,342,489.

25.     The Sitework SOW was to be funded in two phases: an initial $30,000,000 authorized under the Sitework SOW, with the remaining funding to be authorized under an amendment to the Sitework SOW.

26.     Skanska was not authorized to commit any of the Estimated Construction Phase Contract Sum without Regeneron's prior written authorization. (Sitework SOW § 2.1.2.)

27.     The actual amount to be paid to Skanska under the Sitework SOW was to be the total of (1) the awarded Cost of Work for the Project; plus (2) an agreed upon markup, including a 1.9% fee to Skanska, additions for insurance, and other cost elements.

28.     Upon information and belief, to perform a substantial portion of its work under the Sitework SOW, Skanska entered into a Subcontract Agreement with Shawn's Lawns Inc. ("Shawn's Lawns").

29.     To date, Regeneron has paid Skanska $51,330,534.69 under the Sitework SOW.

**II.      Skanska's Bad Faith Misconduct and Breaches of the Preconstruction SOW**

**A.      Skanska's Misconduct During the Course of the Preconstruction SOW**

30.      From nearly the outset of its work as the construction manager on the Project, Skanska acted in bad faith to the detriment of Regeneron and the Project.

31.      For example, beginning in or around December 2022, Skanska began demanding additional compensation for preconstruction work it was performing pursuant to the Preconstruction SOW, despite the fact that the requested additional compensation was for work required by or reasonably inferred from the Agreements, and therefore covered by the MSA's fixed fee provision.

32.      Specifically, Skanska sought additional compensation for, *inter alia*, constructability reviews, BIM discordance, budget reconciliations, market volatility studies, and impact costs due to Regeneron's alleged delay in issuing authorizations to proceed ("ATPs") and final plans, specifications, and related documents necessary to start construction.  Other than a corporate growth study and certain bid revisions (for which Regeneron agreed to pay Skanska $87,000 and $10,000, respectively), each of Skanska's claims for additional compensation were for services plainly contemplated under the MSA and the Preconstruction SOW, and thus not additionally compensable over the agreed-upon fixed fee.  From December 2022 until July 2023, Skanska engaged in an unrelenting and combative letter-writing campaign regarding its unsupported claims for additional compensation for base services under the Preconstruction SOW. In fact, throughout the course of their retention by Regeneron, Skanska's behavior was directly opposed to Regeneron's efforts to progress the Project in a collaborative manner and was instead intended to extort additional compensation not due under the Agreements.

33.     In addition, during this time, Skanska continually disregarded its obligations under the MSA.  For example, Skanska refused to perform market volatility studies and cost escalation impacts, failed to produce a comprehensive buy out strategy, and did not provide monthly cashflow reports, all of which Skanska was required to do under the MSA.

34.     In addition, throughout the course of their retention by Regeneron, Skanska personnel were often aggressive and unprofessional toward Regeneron, including, for example, repeatedly failing to respond timely to calls and communications from Regeneron's project management leaders.

35.     Skanska also delayed the Project by raising specious concerns over aspects of the Project design that were legitimate and proper.  In particular, Skanska caused delay by calling into question the curtain wall design, despite having no legitimate basis for doing so.

36.     Finally, during the Preconstruction SOW phase, and, indeed, throughout the entirety of its tenure on the Project, Skanska repeatedly threatened to withdraw from the Project and stop work unless its extracontractual demands for additional compensation under the Preconstruction SOW were met.

III.    **Skanska's Breaches of the Sitework SOW**

37.     Pursuant to the Sitework SOW, Skanska agreed to perform certain site excavation and utility work related to the Project, including erosion and sediment control, tree removal and site clearing, mass excavation of rock including blasting, utility installation and backfill, make-ready work for the construction trailer complex, and other earthworks.

38.     Skanska, however, repeatedly breached its contractual obligations pursuant to the Sitework SOW by (a) overbilling Regeneron by charging personnel performing preconstruction work through the Sitework SOW; (b) proceeding to construct a roadway contrary to approved

designs and without Regeneron's approval; and (c) failing to move stockpiles of construction material, impeding further construction and resulting in significant damages to Regeneron in an amount to be determined at trial, but in any event, no less than $6 million.

**A.     Skanska Overbilled Regeneron by Charging Preconstruction Personnel Under the Sitework SOW**

39.     First, Skanska overbilled Regeneron by charging preconstruction personnel to the Sitework SOW.

40.     In contrast to the Preconstruction SOW, which was a fixed sum contract, the Sitework SOW was to be billed based on the awarded Cost of Work plus markup.

41.     As set forth in the Sitework SOW, Skanska's personnel performing preconstruction work were not to be billed under the Sitework SOW.  (Sitework SOW § 6.)

42.     The rates Skanska was permitted to charge for personnel, known as the General Conditions rates, are specified in Section 5 and Exhibit I of the Sitework SOW and Section 5 and Exhibit F of the Preconstruction SOW.  The SOWs include the allowable rates for each category of personnel working on the Project.

43.     Under the Sitework SOW (and the Preconstruction SOW), Skanska was not entitled to charge Regeneron for any rate increases other than a 3% yearly Cost of Living Adjustment ("COLA") permitted in Section 5 and allowable 1.95% markup.  In addition, any rate increases due to promotions required Regeneron's approval.

44.     On March 3, 2023, April 3, 2023, April 24, 2024, and July 6, 2023, Skanska sent Regeneron letters requesting approval for staffing and/or billing rate increases.

45.     Regeneron conducted an extensive review of Skanska's requests and determined that the requests lacked necessary support, included increases in an amount exceeding that which was allowable under the Agreements, and billed at least 10 employees under both the

Preconstruction SOW and the Sitework SOW. Moreover, these requests came shortly after Skanska signed the Agreement setting the rates.

46.     In or around late 2023, Regeneron discovered that staffing for the Sitework SOW was approximately $1.4 million over budget from the projected amount provided by Skanska in its budget for the year.

47.     This overage for the staffing was attributable to several factors. For example, Skanska's Commercial Manager, Christian Sandberg, was billed at full time to Sitework when, in fact, he demonstrably spent most if not all of his time on preconstruction work as evidenced by deliverables made to Regeneron, including monthly reports under the Preconstruction SOW, tax reporting, attending preconstruction risk meetings, issuing preconstruction change orders, and preparing preconstruction invoices and letters. This individual's hours resulted in $706,380 of improper billing to Regeneron.

48.     In addition, Skanska's initial proposal for its VP Account Manager's, Theodora Diamantis, time under the Sitework SOW was 88 hours but the actual amount Skanska billed for that individual under the Sitework SOW was *722 hours*. These hours totaled $352,000 of improper billing to Regeneron. Like the Commercial Manager, the VP Account Manager also spent significant time on preconstruction work.

49.     Similarly, Skanska initially indicated that it would appoint two project executives to the Sitework phase of the Project, but then billed Regeneron for four project executives under the Sitework SOW. These individuals' hours amounted to $254,000 of improper billing to Regeneron. Again, these individuals also performed preconstruction work.

50.     Remarkably, these increases occurred despite there being a decrease in the Sitework scope as a result of Skanska's impending transition off the Project.

47

51. Upon information and belief, in an attempt to recoup fees that it believed it was entitled to for Preconstruction Phase Services, Skanska improperly billed Preconstruction personnel (which were capped at the fixed fee under the MSA and Preconstruction SOW) under the Sitework SOW, which provided for payment of actual costs plus markup.

52. In total, Skanska overbilled Regeneron for staffing by approximately $1.4 million.

53. Skanska attempted to address Regeneron's concerns about this issue by admitting that some of its team members contributed time to both Preconstruction and Sitework. However, as the Schedule of General Conditions Cost/Staffing Plan does not call for any crossover between personnel for Preconstruction and Sitework, such overbilling was not permissible.

54. After Regeneron raised the issue with Skanska in December of 2023, Skanska began providing credits against the monthly staffing in its invoices, a clear acknowledgment that it had, in fact, been overbilling Regeneron, in breach of its contractual obligations.

55. In total, Skanska provided Regeneron credits of $275,000 against the $1.4 million overbilling.

56. However, a total of $1,125,000 remains overbilled and owed to Regeneron.

**B.    Skanska's Improper and Unauthorized Road Construction**

57. The Project contemplated the construction of a roadway along the northern perimeter of the Project site (the "Entry Drive Roadway"). However, the approved Project plans contemplated the construction of the Entry Drive Roadway only after certain building foundation construction and backfill for that construction was completed. Skanska's logistics plans dated May 15, 2023, October 24, 2023, and November 13, 2023, all confirmed this timeline.

58. Skanska acknowledged in multiple other documents and communications, including in an August 8, 2023 letter, at an August 25, 2023 meeting, and in its September 2023

48

monthly progress report, that the Entry Drive Roadway should not proceed at that time because doing so would interfere with building foundations and backfill against those foundations that had not yet been constructed or completed.

59.    In September, Skanska submitted a pencil requisition that included a schedule of values breakout with line items related to the northern perimeter work.

60.    Upon review of that pencil requisition, Regeneron was unable to understand the value of the work, and believed that Skanska was overbilling it for certain work not yet completed.

61.    On October 26, 2023, Regeneron emailed Skanska requesting additional information.  At the same time, Regeneron agreed that it would review the requisition and move it through the approval process, but that Skanska needed to substantiate and explain the work that had been done for which it had billed Regeneron.

62.    Despite further communications requesting clarification, Skanska was not able to substantiate the work for which it had billed Regeneron.  The parties remained in dispute over the amount Skanska was charging Regeneron, particularly with respect to work surrounding the northern perimeter of the Site, which Regeneron believed had not yet been done.

63.    In or around December 12, 2023, Regeneron's Associate Director of Project Management performed a site visit.  At this visit, it was discovered that Skanska had performed a significant portion of the north roadway utility and earthwork that the parties had previously agreed would not be undertaken until later, against Regeneron's wishes and without Regeneron's approval.

64.    In addition to the construction of the Entry Drive Roadway, Skanska failed to maintain a thirty-foot buffer around the buildings necessary for crane placement.

65.    Skanska never informed Regeneron that it intended to change its plans or requested Regeneron's approval to begin work on the Entry Drive Roadway.

66.    For all the reasons set forth above, the Entry Drive Roadway should not have been built at this stage of the Project, as it interfered with further construction plans.  As a result, Regeneron is now forced to incur the costs necessary to remedy the improper and unwanted work that Skanska performed.

67.    The estimated cost to Regeneron of the rework is $3,970,000, which includes expenses relating to removing 200 feet of road that Skanska improperly built, excavation and offsite disposal of materials from the road, importation of new suitable materials, and stormwater management.

### C.    Skanska Failed to Properly Dispose of Construction Materials Stockpiles

68.    To the extent there is Defective Work, defined as any "portion of the Work[3] that is not in conformance with the Contract Documents," (MSA § 1.1.15), the MSA requires Skanska to promptly correct such Defective Work at its own cost and expense, (*id.* § 22.1), and if it fails to do so, Regeneron may correct the Defective Work and charge Skanska for the costs thereof (*id.* § 22.3).

69.    In connection with its work under the Sitework SOW, Skanska caused construction and demolition materials (the "Stockpiles") to accumulate at the Project in areas that were reserved for building construction and that impeded Regeneron's ability to perform other necessary tasks for the Project, including work on foundations for certain buildings.

---

[3] "Work" is defined in the MSA to be "the construction, the supply of materials and equipment, services and administration necessary or incidental to fulfill Construction Manager's obligations for the Project to the satisfaction of Regeneron in conformance with the Contract Documents and the Services Agreement.  The Work may refer to the whole Project or only a part of the Project if designated work is also being performed by Regeneron or others engaged by Regeneron.  Work shall not include Preconstruction Phase Services other than Early Work."  (MSA § 1.1.34.)

70.     In a meeting in August 2023 between Skanska and Regeneron to discuss Skanska's transition off the Project, Skanska represented to Regeneron that it would keep the Stockpiles within certain boundary areas.  Based on this representation, Regeneron understood (and approved) that areas outside those designated for the Stockpiles would be clear of all materials so that work on building foundations could start.

71.     Skanska confirmed this understanding again in an email on October 5, 2023, stating certain areas of the Project Site would be kept clear for the start of foundations and other work necessary to begin the foundations.

72.     As of February 2024, however, Skanska had not removed the Stockpiles from the areas that needed to be cleared for foundation work to start.

73.     On February 5, 2024, Regeneron emailed Skanska to, among other things, inquire as to why the Stockpiles were still in those areas.

74.     Skanska provided a relocation plan for the Stockpiles on February 8, 2024.

75.     In comments relayed to Skanska in or around February 20, 2024, Regeneron identified that the Stockpiles must be either (1) screened, amended and moved to a different area or (2) exported and disposed of offsite.  Regeneron's instructions also indicated that the Stockpiles were impeding substantial completion of one of the parking garages, the location of certain trailers on site, and backfill work that needed to be done.

76.     In multiple communications subsequent to February 20, 2024, Skanska was notified that it was required to move the Stockpiles, but refused to do so, in contravention of its contractual obligation.

77. Pursuant to the MSA, Construction Manager and its subcontractors are required to fully execute the Work in strict accordance with the Contract Documents in a good and workmanlike manner.  (MSA §§ 4.1, 20.1, 33.5.)

78. Because Skanska refused to move the Stockpiles, Regeneron is forced to incur costs of approximately $900,000 to relocate the Stockpiles.  Skanska is liable to Regeneron for that cost in accordance with the terms of the MSA.

## IV.   Skanska's Bad Faith in the Negotiations for the Remaining Construction Phase SOWs and Subsequent Failure to Perform its Contractual Obligations

79. After Skanska entered into the Preconstruction SOW and the Sitework SOW and began performing work under those agreements, the parties began negotiations for the SOWs that would govern the construction phase of the project (the "Remaining Construction Phase SOWs"). Once those negotiations began, however, it became clear that Skanska did not intend to comply with its initial RFP for the Project.

80. Skanska used its perceived leverage to press for revisions to the MSA, and the forms of SOWs attached thereto, that would be more favorable to Skanska.  For example, Skanska informed Regeneron that it refused to enter into a Construction Phase SOW for the central utility plant and three parking garages integral to the Project if that SOW would be governed by the terms of the MSA.

81. At the same time, Skanska sought additional compensation through inappropriate change orders for work that was required to be provided under the MSA.

82. In total, the parties spent over six months negotiating terms for the Remaining Construction Phase SOWs, with Regeneron making numerous concessions to Skanska's demands in a repeated show of good faith.  Those negotiations ultimately broke down in July 2023, when Skanska abruptly and unilaterally withdrew from the discussions.

83. Skanska's tactics were a substantial drain on Regeneron's resources, as Regeneron was forced to spend hundreds of man hours addressing Skanska's many burdensome requests and engaging with Skanska in fruitless exchanges, which resulted in unnecessary delays to the Project.

84. Once it became clear that Skanska would not continue as construction manager for the more lucrative construction phase of the Project, Skanska's conduct with respect to the remaining work on the Preconstruction SOW and the Sitework SOW deteriorated markedly.

85. Skanska even went so far as to engage in retaliatory misconduct, most particularly in July 2023 when it threatened to remove its name from applications for certain building permits necessary to perform work related to the Preconstruction and Sitework phases of the Project.

## V.    Skanska's Bad Faith During Sitework SOW Transition Negotiations

86. The Sitework SOW contemplated a deadline for substantial completion of excavation and utilities by January 2, 2024. Substantial completion is defined in the MSA as occurring "on the date when the Work is sufficiently complete in accordance with the Contract Documents so that Regeneron may occupy or utilize the Project, for the use for which it is intended." (MSA § 1.1.32.)

87. On January 2, 2024, Skanska sent Regeneron a letter in which it purported to have achieved substantial completion of Skanska's work under the Sitework SOW.

88. As described below, that claim was false, and Skanska continued to perform work on utilities and earthwork after January 2. Accordingly, Regeneron rejected Skanska's assertion that it had achieved substantial completion of Site Work.

89. Following the parties' disagreement over the substantial completion of the Sitework SOW, the parties sought a path forward and began negotiating a closeout of Skanska's work on the Sitework SOW. Regeneron engaged in those negotiations in good faith in an effort to resolve

any outstanding issues relating to the Sitework SOW and allow Regeneron to transfer work to a new construction manager.

90.    Over the course of several months from January through April 2024, Regeneron devoted substantial effort to those negotiations.  In connection with those negotiations, Skanska proposed and drafted a document entitled Settlement Negotiation Agreement, which designated all communications between the parties in connection with the Sitework SOW closeout to be confidential.

91.    The Settlement Negotiation Agreement was signed by both parties and provides that, in addition to FRCP 408:

> ***all statements and discussions at the aforesaid meetings are to be considered in the nature of confidential settlement negotiations*** and are made without prejudice. Accordingly, the Parties agree and consent that any discussions and negotiations between them, including without limitation, statements of fact and/or opinion, ***and/or any oral and written communications exchanged between the Parties or their representatives during or in connection with such meetings and in other communications arising out of or relating to such meetings shall not be disclosed to any individual or entity . . . , nor are they discoverable, admissible as evidence or to otherwise be used in any existing or subsequent lawsuit, arbitration, or any dispute resolution proceeding.***  Further, all statements, discussions or oral or written communications made or offered by the Parties and/or their attorneys in connection with the settlement meeting(s) (a) will not be disclosed to Third Parties except persons associated with the participants in the settlement process, and (b) are inadmissible for any purposes, including impeachment, under CPLR 4547, F.R. Evid. 408 and/or any applicable state or federal statute, rule or common law.

(emphasis added.)

92.    Following the execution of the Settlement Negotiation Agreement, the parties engaged in communications pursuant to that agreement.

93.    During the course of those protected settlement discussions and in a remarkable display of bad faith, however, instead of finalizing the agreement, on April 30, 2024, Skanska sent Regeneron a letter with the subject line, "Notice of Regeneron's Material Breach of Sitework SOW."  In that letter, Skanska claimed again that it had achieved substantial completion of the

Sitework SOW and, at the same time, accused Regeneron of interfering with Skanska's ability to do Site Work.  It also claimed that Regeneron owed Skanska money and that Regeneron had interfered with its relationship with Shawn's Lawns, despite the fact that Skanska had recommended, and expressly authorized, Regeneron to contact Shawn's Lawns directly to discuss the transition to a new construction manager.

94.    There is no provision in the Agreements that would permit Skanska to terminate the Sitework SOW under these circumstances and Skanska's claim that Regeneron breached the Sitework SOW was false.

95.    The blatant falsehoods in Skanska's April 30 Letter at a time when the parties were actively negotiating were made in direct contravention to Skanska's obligation to operate in good faith.

96.    In addition, as described above, on April 30, 2024, Skanska wrote to the Town of Greenburgh and sought to withdraw Skanska's name from pending applications for building permits for the Project.

97.    At that time, Skanska also demobilized from the Project site and abandoned the remaining work under the Sitework SOW.

98.    Regeneron responded by letter dated May 3, 2024, rejecting the notice of breach and advising Skanska that it was in breach of the MSA and Sitework SOW, had effectively abandoned the Sitework SOW, and had repudiated its obligations under the MSA and Sitework SOW.  As a result, Regeneron informed Skanska that there was an ongoing Event of Default, as defined in the MSA, and it was terminating the Sitework SOW for cause.  It also reiterated that, contrary to Skanska's assertion in its April 30 Letter, Skanska never achieved substantial completion of its obligations under the Sitework SOW.

99.     Then, on July 12, 2024, in this litigation, Skanska sought leave from this Court to file a first amended complaint.  Attached to that letter motion was a proposed first amended complaint, which included allegations regarding communications between the parties in connection with the protected settlement negotiations.

100.    By including such allegations in its filing, Skanska breached the Settlement Negotiation Agreement.

101.    Skanska breached the Settlement Negotiation Agreement again on July 29, 2024, when it filed its First Amended Complaint, which contains those same allegations.

## AS AND FOR A FIRST COUNTERCLAIM
### (Breach of Contract)

102.    Regeneron repeats and realleges each and every allegation contained in the Counterclaim with the same force and effect as if set forth herein.

103.    The MSA constitutes a valid and enforceable contract between Regeneron and Skanska.  Regeneron performed all obligations required of it under the MSA.

104.    The Preconstruction SOW constitutes a valid and enforceable contract between Regeneron and Skanska.   Regeneron performed all obligations required of it under the Preconstruction SOW.

105.    The Sitework SOW constitutes a valid and enforceable contract between Regeneron and Skanska.  Regeneron performed all obligations required of it under the Sitework SOW.

106.    As set forth in these Counterclaims, Skanska has breached the Agreements in a number of ways, including by (1) overbilling Regeneron for personnel by charging the same individuals' time under both the Preconstruction SOW and Sitework SOW; (2) failing to store and/or relocate the Stockpiles to an appropriate area that did not interfere with the Project; (3) constructing the Entry Drive Roadway without notifying Regeneron or seeking Regeneron's

approval; and (4) terminating the Sitework SOW without any legal basis to do so. As a result of Skanska's breaches, Regeneron has been damaged by an amount to be determined at trial, but in any event, not less than $6 million.

**AS AND FOR A SECOND COUNTERCLAIM**
**(Breach of Contract – Settlement Negotiation Agreement)**

107.    Regeneron repeats and realleges each and every allegation contained in the Counterclaim with the same force and effect as if set forth herein.

108.    The Settlement Negotiation Agreement constitutes a valid and enforceable contract between Regeneron and Skanska.

109.    Regeneron performed all of its obligations required of it under the Settlement Negotiation Agreement.

110.    The Settlement Negotiation Agreement explicitly prohibits the use of the parties' communications in connection with their negotiations of the closeout of the Sitework SOW in this lawsuit.

111.    Skanska breached the Settlement Negotiation Agreement when, in violation of that prohibition, it filed on the docket in this case its proposed amended complaint as an attachment to its letter motion seeking to file an amended complaint, ECF No. 49, and again when it filed its First Amended Complaint, ECF No. 52.

112.    As a result of Skanska's breaches, Regeneron has been damaged in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Regeneron respectfully requests that the Court enter judgment:

    a.    Dismissing Plaintiff's FAC with prejudice and at its costs;

    b.    Awarding Regeneron damages on its counterclaims in an amount to be

57

determined at trial;

c.  Awarding Regeneron costs and attorneys' fees as allowed by law; and

d.  Awarding Regeneron such other and further relief as the Court deems just and
proper.

Dated:  August 8, 2024
        White Plains, New York

                                        YANKWITT LLP

                                By:  _____
                                        Russell M. Yankwitt
                                        Dina L. Hamerman
                                        Jonathan Ohring
                                        Cassandra M. Vogel
                                        140 Grand Street, Suite 705
                                        White Plains, NY 10601
                                        (914) 686-1500
                                        *Attorneys for Defendant and Counterclaim Plaintiff
                                        Regeneron*